UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEAN RICHARD SEVERIN,

               Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION; STEVEN DORCELY, FORMER PRINCIPAL OF URBAN ACTION ACADEMY HIGH SCHOOL; JORDAN BARNETT, FORMER ASSISTANT PRINCIPAL OF URBAN ACTION ACADEMY HIGH SCHOOL; MICHAEL PRAYOR, FORMER SUPERINTENDENT OVER URBAN ACTION ACADEMY HIGH SCHOOL,

               Defendants.

**COMPLAINT**

**ECF CASE**

19 CV ____

**JURY TRIAL DEMANDED**

Plaintiff JEAN RICHARD SEVERIN by his attorneys, GLASS & HOGROGIAN LLP, as and for his Complaint against Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. Section 1983 and New York Civil Service Law Section 75-b (hereinafter "CLS § 75-b") as a result of maltreatment and retaliatory actions taken against him after he raised matters of a public concern while a teacher employed by Defendant New York City Department of Education (NYCDOE).

2. Plaintiff seeks compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal, state, and city law.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education ("NYCDOE") is located at 52 Chambers Street, New York, NY 10007.

5. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367(a).

7. On October 17, 2017, Plaintiff served a Written Verified Notice of Claim on Defendant regarding his state and city law claims.

## PARTIES

8. Plaintiff is a resident of the County of Queens and the State of New York.

9. At all times relevant herein, Plaintiff was a "public employee" of Defendant NYCDOE within the meaning of New York State Civil Service Law § 75-b(1)(b).

10. At all times relevant herein, Defendant NYCDOE was a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

11. At all times relevant herein, Defendant Steven Dorcely was the principal of Urban Action Academy in Brooklyn, New York.

12. At all times relevant herein, Defendant Jordan Barnett was the assistant principal of Urban Action Academy in Brooklyn, New York.

13. At all times relevant herein, Defendant Michael Prayor was the Superintendent over Urban Action Academy High School in Brooklyn, New York, and Principal Dorcely's rating officer.

## STATEMENT OF FACTS

14. Plaintiff began his employment with Defendant NYCDOE in 1996 as a Social Studies teacher.

15. Plaintiff received tenure in or around 2008 while at P.S. 40.

16. Plaintiff received a Ph.D. in interdisciplinary studies focus, public policy, and social change in 2014 from Union Institute and University in Ohio.

17. Until his termination in July 2017, Plaintiff had twenty-one years of service with the NYCDOE.

18. In June 2014, Principal Stephen Dorcely hired Plaintiff to teach at Urban Action Academy High School (hereinafter "UAA") in Canarsie, Brooklyn, after his previous school was being phased out by the NYCDOE.

19. In the summer of 2014, Principal Dorcely asked Plaintiff to lead and begin planning and writing the curriculum for the social studies department at UAA for the 2014-2015 school year and to be on Principal Dorcely's emergency building response team.

20. In August 2014, Plaintiff was in a planning session at the school with the planning team to plan curriculum for the upcoming school year. During the planning session, Principal Dorcely summoned Plaintiff from the planning session and brought him to a room

adjacent to Principal Dorcely's office.  At that time, Principal Dorcely presented Plaintiff with a female student's (hereinafter "Student A") Regents test because she failed the test, and consequently, could not graduate.  Student A was with Principal Dorcely and Plaintiff at the time of the meeting.  Principal Dorcely asked Plaintiff to review the Regents test and determine what questions Student A could improve on.  Plaintiff reviewed the test and pointed out issues with the Document Based Questions (hereinafter "DBQs").  Principal Dorcely took out a pencil as if he were going to make changes on the student's test paper.

21. When Principal Dorcely looked at Plaintiff, Plaintiff could not control his body language and crossed his hands, in an innocent motion, and retracted back his head, as he was shocked at what he was witnessing as the student started to change the Regents answers on the test with the Principal's encouragement.  Principal Dorcely then proceeded to put the pencil and test away and thanked Plaintiff for his time.

22. Student A was not assigned to him as one of Plaintiff's students in his classes. As such, Plaintiff's review of the student's test papers was not part of his official duties.

23. In or about April 2015, Plaintiff was speaking to a United Federation of Teachers (hereinafter "UFT") district representative (not from the school) when the August 2014 testing impropriety incident came up in conversation. The union representative immediately advised Plaintiff to report the incident to the New York City Special Commissioner of Investigation (SCI).

24. Plaintiff immediately reported the incident to SCI.  When Plaintiff made his complaint, he gave his name and information to SCI. As such, the complaint was not anonymous, and Plaintiff identified himself as the reporter.

25. At some point between April and June 2015, SCI transferred the case to the NYCDOE Office of Special Investigations (hereinafter "OSI") for investigation.

26. In June 2015, OSI investigators questioned Plaintiff, Student A, and Principal Dorcely regarding Plaintiff's allegation against Principal Dorcely.

27. In June 2015, the OSI investigators informed Principal Dorcely that Plaintiff was the individual who had made the initial complaint about the testing impropriety.

28. On or about September 8, 2015, Principal Dorcely informed the staff at a professional development meeting that there is a teacher who reported him, but he is now back and stronger than ever and he is going to go in beast mode. Principal Dorcely was looking at Plaintiff at the meeting when he made this statement.

29. On or about September 17, 2015, shortly after Plaintiff returned to school for the 2015-2016 school year, Principal Dorcely approached him after a meeting and threatened, "This year you're done and you're gone, I'm going to fuck you up." Plaintiff subsequently filed a police report against Principal Dorcely regarding this statement.

30. On or about October 2015, Principal Dorcely shoved Plaintiff while in the school. Plaintiff filed a second police report against Principal Dorcely regarding this assault.

31. On or about November 2015, Plaintiff filed a third police report that Principal Dorcely took pictures with his cellphone of him in an unauthorized manner.

32. Plaintiff had received an "Effective" overall rating for the 2014-2015 school year from Principal Dorcely.

33. Beginning in September 2015, however, Principal Dorcely and his administration issued Plaintiff evaluations that were rated "Ineffective" in every category.

34. Plaintiff continued to relentlessly receive approximately 46 negative evaluations and/or disciplinary letters from September through November 2015 from Principal Dorcely and his administration.

35. Almost every week during the 2015-2016 school year, Plaintiff was summoned to multiple disciplinary meetings with the administration for trivial and fabricated allegations against him.

36. On or about late November 2015, Plaintiff sought his union's assistance for relief from the relentless retaliation by Principal Dorcely.

37. A meeting was held with Superintendent Michael Prayor, attended by Plaintiff and Principal Dorcely and the Superintendent and district representative. At the meeting, the parties agreed to a "cooling off" period at that time, in which Principal Dorcely would not observe or interact with Plaintiff directly.

38. On or about January 2016, Principal Dorcely reneged on the cooling off period by threatening to pursue Section 3020-a disciplinary charges against Plaintiff seeking his termination. Superintendent Prayor did nothing to reimpose or maintain the cooling off period.

39. In May 2016, Plaintiff was served a first set of New York State Education Law § 3020-a (hereinafter "3020-a") Charges and Specifications seeking termination of his employment. Principal Dorcely initiated these charges in retaliation for Plaintiff's 2015 SCI complaint. At that time, Plaintiff was reassigned from the Urban Action Academy school to a reassignment center.

40. Plaintiff was charged with 18 disciplinary specifications in his first Section 3020-a case.

41. Hearing Officer James Brown was appointed to hear the first set of charges. In a Decision dated September 9, 2016, Hearing Officer Brown dismissed most of the specifications against Plaintiff and issued him a $2,000 fine.

42. In his decision, Hearing Officer Brown explicitly noted that Principal Dorcely had exhibited personal animus towards Plaintiff and the "cooling off" period ordered by Superintendent Prayor.

43. Plaintiff received Hearing Officer Brown's Section 3020-a decision in September 2016. Plaintiff was permanently reassigned from Principal Dorcely's school to the Absent Teacher Reserve (hereinafter "ATR") pool as a roving substitute teacher.

44. Although Plaintiff no longer taught at Urban Action Academy, Principal Dorcely continued his campaign of retaliation against him by causing a second set of Section 3020-a disciplinary charges to be served against him soon after Hearing Officer Brown refused to fire Plaintiff based on the first set of charges.

45. In or around February or March 2017, Plaintiff received the second set of 3020-a charges, including additional charges relating back to his time at Urban Action Academy that could have been included as part of the first 3020-a proceeding before Hearing Officer James Brown.

46. Another Hearing Officer, Richard Williams, was assigned to hear this new set of charges against Plaintiff. In a Decision dated July 17, 2017, Hearing Officer Richard Williams terminated Plaintiff's employment.

47. As a result of his retaliatory termination initiated by Principal Dorcely and the NYCDOE, Plaintiff has suffered substantial loss of salary and benefits, emotional damages,

and psychological distress, as well as loss of per session opportunities and other compensation.

## FIRST CAUSE OF ACTION

### RETALIATION AGAINST PLAINTIFF FOR EXERCISING FREEDOM OF SPEECH IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

48. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

49. While acting under color of State law, Defendants violated Plaintiff's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to matters of public concern.

50. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered loss of his tenured employment and continues to suffer monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### RETALIATION IN VIOLATION OF NEW YORK STATE CIVIL SERVICE LAW § 75-b

51. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

52. Plaintiff reported violations of federal, city and state law by the school administration. He thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a).

53. Defendants had notice that Plaintiff participated in such protected activities.

54. Defendants retaliated against Plaintiff by engaging in adverse "personnel actions" as defined by New York Civil Service Law § 75-b(1)(d).

55. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

## JURY DEMAND

56. Plaintiff hereby demands a trial by Jury.

## PRAYER/DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor against Defendants as follows:

    a. Judgment declaring that Defendants' acts violated Plaintiff's rights as secured by federal, state and city law prohibiting retaliation in employment;

    b. Equitable relief including reinstatement with backpay of his tenured employment;

    c. Compensatory damages to compensate Plaintiff for economic losses including backpay, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish,

        embarrassment, indignity, and dislocation, in an amount to be determined at trial;

    d.    Punitive damages against the Defendant;

    e.    Statutory attorneys' fees, interest, costs, and disbursements, and

    f.    For such other and further legal, equitable or other relief as the Court deems just and proper.

DATED:    New York, New York
January 23, 2019

        GLASS & HOGROGIAN LLP
        85 Broad Street, 18th Floor - WeWork
        New York, NY 10004
        (212) 537-6859

By:    */s: Bryan D. Glass*
      BRYAN D. GLASS, ESQ.