19-CV-00775 (MKV) (RWL)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEAN RICHARD SEVERIN,

Plaintiff,

- against -

NEW YORK CITY DEPARTMENT OF EDUCATION; STEVEN
DORCELY, former Principal of Urban Action Academy High School;
JORDAN BARNETT, former Assistant Principal of Urban Action
Academy High School; MICHAEL PRAYOR, former Superintendent
of Urban Action Academy High School,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

***JAMES E. JOHNSON***
Corporation Counsel of the City of New York
    Attorney for New York City Department of Education,
    Steven Dorcely, and Michael Prayor
    100 Church Street
    New York, N.Y. 10007
    Of Counsel: Lillian P. Wesley
    Tel: (212) 356-2079
    Matter No. 2019-007788


***ABRAMS, GORELICK, FRIEDMAN & JACOBSON, LLP***
    Attorney for Defendant Jordan Barnett
    One Battery Park Plaza, 4th Floor
    New York, N.Y. 10004
    Of Counsel: James E. Kimmel
    Tel: (212) 422-1200
    File No.: 32024

**TABLE OF CONTENTS**

TABLE OF AUTHORTIES ............................................................................................. iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    A.   The 2016 § 3020-a Hearing ..................................................................... 3

    B.   The 2017 § 3020-a Hearing ..................................................................... 4

    C.   The Article 75 Petition to Vacate the 2017 § 3020-a Opinion and Decision ............ 6

    D.   Plaintiff's Federal Action ........................................................................ 8

LEGAL STANDARD .................................................................................................... 8

ARGUMENT .................................................................................................................. 9

        POINT I ................................................................................................. 9

            PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF

            COLLATERAL ESTOPPEL ................................................................... 9

        POINT II ............................................................................................... 15

            PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF RES

            JUDICATA ........................................................................................... 15

        POINT III .............................................................................................. 16

            AS DEFENDANTS HAD AN INDEPENDENT BASIS FOR

            PREFERRING CHARGES, PLAINTIFF DOES NOT HAVE A VIABLE

            RETALIATION CLAIM UNDER EITHER THE FIRST AMENDMENT

            OR CIVIL SERVICE LAW § 75-B ........................................................ 16

        POINT IV .............................................................................................. 18

            PLAINTIFF'S STATE LAW CLAIM IS BARRED BY THE STATUTE

            OF LIMITATIONS ............................................................................... 18

CONCLUSION..........................................................................................................................20

# TABLE OF AUTHORTIES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................... 9

*Brey v. Bd. of Educ. of Jeffersonville-Youngsville Cent. School Dist.*,
  245 A.D.2d 613 (3d Dep't 1997) ...................................................................................... 19

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*,
  411 F.3d 306 (2d Cir. 2005) .............................................................................................. 11

*Carvalho v. Stevens*,
  No. 12 Civ. 128 (LTS) (FM), 2013 U.S. Dist. LEXIS 100467 (S.D.N.Y. July 17, 2013) ....... 11

*Cleveland v. Caplaw Enters.*,
  448 F.3d 518 (2d Cir. 2006) ................................................................................................ 8

*Dolan v. Roth*,
  170 F. App'x 743 (2d Cir. 2006) ...................................................................................... 16

*Donas v. City of New York*,
  62 A.D.3d 504 (1st Dep't 2009) ........................................................................................ 21

*Evans v. Ottimo*,
  469 F.3d 278 (2d Cir. 2006) .............................................................................................. 10

*Ferraro v. N.Y.C. Dep't of Educ.*,
  752 F. App'x. 70 (2d Cir. 2018) ........................................................................................ 11

*Garcia v. Hartford Police Dep't*,
  706 F.3d 120 (2d Cir. 2013) .............................................................................................. 18

*Kaufman v. Eli Lilly & Co.*,
  65 N.Y.2d 449 (1985) ........................................................................................................ 10

*Lafleur v. Whitman*,
  300 F.3d 256 (2d Cir. 2002) ........................................................................................ 11, 16

*Leftridge v. N.Y. City Dep't of Educ.*,
  No. 17-cv-7027, 2020 U.S. Dist. LEXIS 55423 (S.D.N.Y. Mar. 30, 2020) ........................... 16

*Maher v. Town of Stony Point*,
  No. 16-CV-607 (KMK), 2018 U.S. Dist. LEXIS 169722 (S.D.N.Y. Sept. 28, 2018) .............. 19

*Matter of Kowaleski v. New York State Dep't of Correctional Servs.*,
  16 N.Y.3d 85 (2010) .................................................................................................... 15, 21

*Mazur v. N.Y. City Dep't of Educ.*,
    53 F.Supp.3d 618 (S.D.N.Y. 2014), *aff'd*, 621 F. App'x. 88 (2d Cir. 2015)............................ 16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
    429 U.S. 274 (1997)........................................................................................................ 18

*Nash v. Bd. of Educ. of N.Y.*,
    No. 99 Civ. 9611 (NRB), 2016 U.S. Dist. LEXIS 135793 (S.D.N.Y. Sept. 22, 2016) .............. 9

*Rothstein v. UBS AG*,
    708 F.3d 82, 94 (2d Cir. 2013)............................................................................................ 9

*Sank v. City Univ. of N.Y.*,
    No. 10 Civ. 4975, 2011 U.S. Dist. LEXIS 125016 (S.D.N.Y. Oct. 28, 2011) ......................... 16

*Smith v. City of N.Y.*,
    130 F. Supp. 3d 819 (S.D.N.Y. 2015)................................................................................. 17

*U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*,
    No. 98 Civ. 3099, 2001 U.S. Dist. LEXIS 3349 (S.D.N.Y. Mar. 22, 2001)............................. 9

*Washington v. N.Y.C. Dep't of Educ.*,
    740 F. App'x 730 (2d Cir. 2018) .................................................................................. 10, 11

*Zehner v. Jordan-Elbridge Bd. of Educ.*,
    666 F. App'x 29 (2d Cir. 2016) ......................................................................................... 19

## PRELIMINARY STATEMENT

Plaintiff, a teacher formerly employed by Defendant New York City Department of Education ("DOE"), brings this action asserting claims under the First Amendment and New York State Civil Law § 75-b. Principally, Plaintiff alleges that the DOE brought disciplinary charges against him in retaliation for reporting Defendant Steven Dorcely, former Principal of Urban Action Academy High School, to the New York City Special Commissioner of Investigation. Plaintiff was terminated after a Hearing Officer sustained charges, *inter alia*, for using expletives and discriminatory language in front of students and showing an R-rated adult animation with sexual references and pervasive language to his students during class. Although Plaintiff sought to vacate the Hearing Officer's decision in a state court proceeding brought under Article 75 of the New York Civil Practice Law and Rules, the state court judge rejected Plaintiff's challenge.

Defendants DOE, Dorcely, Michael Prayor (former Superintendent of Urban Action Academy High), and Jordan Barnett (former Assistant Principal of Urban Action Academy High School) (collectively, "Defendants")[1] jointly move[2], pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings dismissing Plaintiff's Complaint in its entirety on grounds that Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata. Plaintiff's state law claim is also barred by the statute of limitations.

---

[1] Defendants DOE, Dorcely, and Prayor are represented by the Office of the Corporation Counsel of the City of New York, and Defendant Barnett is represented by Abrams, Gorelick, Friedman & Jacobson, LLP.

[2] Defendants jointly submit this motion for the purposes of judicial economy, as their interests are united and identical for present purposes.

In June 2014, Plaintiff was hired to teach at Urban Action Academy by Defendant Dorcely, who was then the principal of Urban Action Academy. Compl. at ¶ 18, ECF No. 1. Plaintiff alleges that in August 2014, Dorcely called Plaintiff into a room adjacent to Dorcely's office and asked Plaintiff to review a student's Regents exam with the student because she had failed the test. Compl. at ¶ 20. Plaintiff alleges that during this meeting, Dorcely "took out a pencil as if he were going to make changes on the student's test paper." *Id.* Plaintiff further alleges that he witnessed the student start to make changes to her exam paper with Dorcely's encouragement before Dorcely dismissed Plaintiff from the meeting. *Id.* at ¶ 21. Though Plaintiff implies that Dorcely helped the student cheat on her Regents exam, he does not allege student's grade was ever changed from failing to passing.

Plaintiff alleges that he reported this incident to the New York City Special Commissioner of Investigation ("SCI") sometime in April 2015 after discussing it with a teacher's union district representative. Compl. at ¶¶ 23–24. SCI subsequently transferred the case to the New York City Department of Education Office of Special Investigations ("OSI"). *Id.* at ¶ 25. As part of its investigation, OSI questioned both Dorcely and Plaintiff. *Id.* at ¶ 26. Plaintiff alleges that during the course of the investigation, OSI informed Dorcely that it was Plaintiff who lodged the complaint against him. *Id.* at ¶ 27.

Plaintiff alleges several incidents then occurred between him and Dorcely, including Dorcely singling him out at a staff meeting held on September 8, 2015, verbally

---

[3] This statement of facts is derived from the allegations in the Complaint herein and Plaintiff's allegations are assumed to be true for purposes of this motion to dismiss only. Defendants also rely on the exhibits annexed to the Declaration of Assistant Corporation Counsel Lillian P. Wesley, executed on April 30, 2020 ("Wesley Decl.") and any reference to lettered exhibits herein are to exhibits annexed to the Wesley Decl.

threatening Plaintiff with termination and physical violence, shoving Plaintiff in the school hallway, and taking pictures of Plaintiff on his cellphone without his consent. *Id.* at ¶¶ 29–31. Plaintiff further alleges that, despite receiving an "effective" overall rating for the 2014-2105 school year, he began receiving "ineffective" ratings in September 2015, and that between September and November 2015, he received approximately 46 negative evaluations and/or disciplinary letters. *Id.* at ¶¶ 32–34.

During a meeting among Plaintiff, Dorcely, and Defendant Superintendent Prayor, it was decided that a "cooling off" period was necessary and that, during this period, Dorcely should not directly supervise Plaintiff. Compl. at ¶¶ 36–37. Plaintiff alleges that, in January 2016, Dorcely ignored the cooling off period and threatened Plaintiff with disciplinary charges and termination, and that Defendant Prayor did not reimpose or maintain the cooling off period at that time. *Id.* at ¶ 38.

## A.    The 2016 § 3020-a Hearing

In May 2016, pursuant to New York Education Law § 3020-a, DOE preferred 18 charges and specifications against Plaintiff alleging, *inter alia*, misconduct, neglect of duty, and insubordination during the 2015-2016 school year at Urban Action Academy. *See* 2016 § 3020-a Opinion and Decision, attached to the Wesley Decl. as Exhibit A; Compl. at ¶ 39. Plaintiff alleges that Dorcely initiated these charges in retaliation for Plaintiff reporting Dorcely to SCI in 2015. Compl. at ¶ 39.

Hearing Officer James Brown conducted several days of hearings between June and August 2016. *See* Wesley Decl. Ex. A, at 2. At the hearing, Plaintiff asserted that the charges should be dismissed because they were conducted "by an administration with a vendetta" against him. *See id.* at 11, 16–17. Further, Plaintiff's counsel stressed the retaliatory defense during opening and closing arguments and urged the Hearing Officer to dismiss all of the charges

precisely because of the alleged retaliatory intent behind the charges. *See* 2016 § 3020-a Hearing Transcript, at T369–371, T776–780, attached to the Wesley Decl. as Exhibit B.

On September 9, 2016, Hearing Officer Brown issued a decision finding Plaintiff guilty of ten of the specifications lodged against him—including failure to attend mandatory meetings departmental meetings on at least 29 (out of 37) occasions, failure to submit mid-term exams for feedback and review, failure to contact administrators to inform them of his absence on several occasions, failure to timely supply the administration with lesson plans, and failure to timely supply student grades. *See* Wesley Decl. Ex. A, at 31. Hearing Officer Brown noted the "toxic" relationship between Plaintiff and Dorcely, but nonetheless determined that "the unmistakable thread running through [Plaintiff's] misconduct is his stubborn noncompliance with his administrators' directives." *Id.* at 30. Additionally, he ordered Plaintiff to pay a $2,000.00 fine for his misconduct. *Id.* Plaintiff was permanently reassigned from Urban Action Academy to the absent teacher reserve pool as a substitute teacher. Compl. at ¶ 43. Plaintiff was subsequently assigned to Middle School for Marketing and Legal Studies in October 2016. *See* 2017 § 3020-a Opinion and Decision, at 27, attached to the Wesley Decl. as Exhibit C.

## B.      The 2017 § 3020-a Hearing

In February 2017, Plaintiff was served with a second set of charges under New York Education Law § 3020-a concerning his time at Urban Action Academy and Middle School for Marketing and Legal Studies. Wesley Decl. Ex. C, at 2. Hearings on these charges were held on several days between March and June 2017, at which testimony was heard from administrators at both schools, as well as OSI investigators who investigated complaints lodged against Plaintiff by students and school staff, and paraprofessionals who worked with Plaintiff. *See id.* The most egregious complaints against Plaintiff involved his use of expletives and discriminatory language in front of students, deriding school policies promoting diversity and

inclusiveness in the presence of students, and falling asleep while showing an R-rated animation with adult themes and sexual references to his students. *Id.* at 3–4. As he had done in connection with the earlier charges, Plaintiff, who was again represented by counsel, pointed to the relationship between himself and Dorcely to damage the validity of the charges. *See* 2017 § 3020-a Hearing Transcript, at T1236–1254, T1335, T1339, T1341–1361, attached to the Wesley Decl. as Exhibit D.

Hearing Officer Richard Williams issued a decision dated July 17, 2017 determining that the most egregious complaints against Plaintiff were substantiated and holding that termination was warranted. Wesley Decl. Ex. C, at 37. Specifically, Hearing Officer Williams held that the evidence established that Plaintiff had engaged in the following serious misconduct which warranted termination:

- Plaintiff made disparaging and discriminatory remarks about homosexuals and transsexuals to his students, including "This is not okay and/or This is not right" (referencing boys dressing up as girls); "The school is promoting gays"; "This is a disgrace"; "The boys are dressed up like trannies."

- Plaintiff made the following remarks in the presence of his students: "this school is bullshit"; the principal of the school "is bullshit"; the principal of the school "is an asshole"; "this piece of shit [Principal Dorcely] lets students walk around dressing like girls."

- Plaintiff failed to discharge his professional responsibilities when he allowed his students to watch an adult content cartoon with pervasive language and sexual references. This cartoon contained a song called the "Dick Riding Song" which included the following sexually explicit lyrics: "I wanna ride your nuts because I think you are the man"; "It's OK to ride that dick" and "Now we're dick riding Obama."

- While assigned to the Middle School of Marketing and Legal Studies, Plaintiff was observed to be asleep and/or in a relaxed position in the presence of students during work hours; Plaintiff failed to report to an assigned location as directed by administration.

- During the 2016-2017 school year, Plaintiff was excessively late 11 times over the course of less than two months.

*See* Wesley Decl. Ex. C, at 19–23, 26, 29, 31. Just as Hearing Officer Brown previously found that Plaintiff's misconduct was the result of "his stubborn noncompliance with his administrators' directives," Hearing Officer Williams also noted Plaintiff's failure to follow directives:

> The proven conduct also evidenced [Plaintiff's] unprofessionalism, extremely poor judgment, lack of control, lack of restraint, impulsiveness, and unwillingness to accept the demands of his position. . . . [Plaintiff] could have mitigated . . . many of the proven specifications concerning a failure to follow directives by accepting the reasonable expectations of the employer and not allowing personal resentment to build to the point of verbal explosion.

*Id.* at 36. Indeed, Hearing Officer Williams specifically pointed to the retaliation claim as further proof of his desire to deflect blame: "[Plaintiff] would rather label his students, co-workers, colleagues, and supervisors liars/dishonest and co-conspirators than accept responsibility for his actions." *Id.*

## C.     The Article 75 Petition to Vacate the 2017 § 3020-a Opinion and Decision

On July 28, 2017, Plaintiff commenced a proceeding in the Supreme Court of the State of New York, New York County, pursuant to Article 75 of the New York Civil Practice Law and Rules (the "State Court Proceeding") to challenge the 2017 § 3020-a Opinion and Decision. Plaintiff subsequently filed a Verified Amended Petition dated September 14, 2017. *See* Verified Amended Petition filed in *Severin v. Dep't of Education of the City School District of the City of New York*, Index No. 655086/2017, attached to the Wesley Decl. as Exhibit E. In the State Court Proceeding, Plaintiff sought to vacate the 2017 § 3020-a Opinion and Decision on the grounds that it was "arbitrary and capricious, imposed an excessive penalty, and was rendered in violation of Petitioner's Due Process Rights." *Id.* at 1. In particular, Plaintiff argued

that "the DOE failed to consolidate the First Set of Specifications for conduct that occurred on April 8 and 18, 2016 with the First 3020-a Proceeding, which took place between June 24, 2016 and August 9, 2016. Instead, the DOE brought the April 8 and 18, 2016 conduct as a second 3020-a proceeding after the First 3020-a Proceeding had concluded." *Id.* at ¶ 27. During oral argument, Plaintiff's counsel emphasized that the case was "all about [Plaintiff] being fired because he's a whistleblower. That's all this case is really about," and attributed this "consolidation" as retaliatory "gamesmanship," the same argument raised here in Plaintiff's Complaint:

> Obviously, Mr. Dorcely wanted [Plaintiff] gone under any purposes and they were going to do whatever it took to get it. And they decided to consolidate and play arbitrators to get the right combination of factors here to get [Plaintiff] fired. The fact is [Plaintiff] would still be teaching if he had not reported the principal for fraud.

*See* Transcript of State Court Proceedings, at 14:7-26, 15:9-12, attached to the Wesley Decl. as Exhibit F; *see also* Compl. at ¶ 44 ("Although Plaintiff no longer taught at Urban Action Academy, Principal Dorcely continued his campaign of retaliation against him by causing a second set of Section 3020-a disciplinary charges to be served against him soon after Hearing Brown refused to fire Plaintiff based on the first set of charges."). Plaintiff further contended that Hearing Officer Williams failed to consider "all of the circumstances and relevant evidence, including many mitigating factors" such as "the chronology of events," referring to Dorcely's alleged history of retaliating against Plaintiff. *See* Wesley Decl. Ex. E, at ¶ 27.

By decision issued at the conclusion of oral argument, Hon. Shlomo S. Hagler granted DOE's cross-motion to dismiss the Amended Petition, and dismissed the Amended Petition in its entirety. *See* Wesley Decl. Ex. F, at 21:19-25. As had been urged by Plaintiff's

counsel, the Court agreed that Plaintiff's claim of retaliation was "the heart of the dispute," but

nonetheless concluded that the evidence supported Hearing Officer Williams' finding:

> The argument that these charges were sustained as a
> result of the animus that the principal had to
> [Plaintiff] really goes to the heart of the issue. The
> hearing officer found at least three types of
> evidence that demonstrably showed that the events
> of April 8, 2016 occurred. [Plaintiff] denies having
> any involvement in making such allegations. This is
> the crux at the heart of the dispute.

*Id.* at 20:4-12. The Court went on to state that the allegations were "heinous" "unbecoming of a

teacher" and "have no place in our society, let alone in a place of higher learning." *Id.* at 20:21-

24.

## D.     Plaintiff's Federal Action

Plaintiff commenced this action on January 25, 2019. Plaintiff asserts two causes

of action in the Complaint: (1) retaliation in violation of the First Amendment rights and (2)

retaliation in violation of New York Civil Service Law § 75-b(1)(d). Compl. at 1. Plaintiff seeks

equitable relief, compensatory monetary damages, punitive damages, attorneys' fees, interest,

costs, and disbursements and other unspecified legal, equitable or other relief "as the Court

deems just and proper." Compl. at 9–10. Defendants answered on April 19, 2020 and May 8,

2020 (ECF Nos. 11 and 16). Defendants now move for judgment on the pleadings.

## LEGAL STANDARD

The standard for addressing a FRCP Rule 12(c) motion for judgment on the

pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See*

*Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). To survive a motion, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Plausible claims are those that allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Further, the reviewing court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, though it is not required to "credit conclusory allegations or legal conclusions couched as factual allegations." *See Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

In deciding a Rule 12(c) motion, a court may consider "matters of which judicial notice may be taken" such as "relevant pleadings, motion papers, orders, and judgments in [a] [s]tate [c]ourt [a]ction without converting [the defendant's] motion to one for summary judgment." *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ. 3099, 2001 U.S. Dist. LEXIS 3349, at *31 n.7 (S.D.N.Y. Mar. 22, 2001); *see also Nash v. Bd. of Educ. of N.Y.*, No. 99 Civ. 9611 (NRB), 2016 U.S. Dist. LEXIS 135793,*14 (S.D.N.Y. Sept. 22, 2016) (noting that collateral estoppel defenses may be analyzed on a Rule 12(c) motion "where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice"). Accordingly, the Court may properly consider the exhibits annexed to the Wesley Declaration submitted in support of this motion.

## ARGUMENT

### POINT I

### PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL

The doctrine of collateral estoppel, or issue preclusion, bars relitigation of a legal or factual issue that was previously decided in a prior action where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the

issue previously litigated was necessary to support a valid and final judgment on the merits." *Washington v. N.Y.C. Dep't of Educ.*, 740 F. App'x 730, 732 (2d Cir. 2018) (quoting *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001)). "The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985) (citations omitted); *see also Evans v. Ottimo*, 469 F.3d 278, 281–82 (2d Cir. 2006). The party invoking issue preclusion need not demonstrate that the prior court ruled expressly on the issue in dispute in the present case, only that the current court "cannot grant [the relief sought] without directly contradicting the [prior] court on issues it has previously decided . . . [that were] necessary to the [prior] court's judgment." *Lafleur v. Whitman*, 300 F.3d 256, 273 (2d Cir. 2002) (citing *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89, 94 (2d Cir. 2000) and *Wilder v. Thomas*, 854 F.2d 605, 620 (2d Cir. 1988)) (internal quotation marks omitted).

"Federal courts are . . . required to give preclusive effect to state court judgments." *Carvalho v. Stevens*, No. 12 Civ. 128 (LTS) (FM), 2013 U.S. Dist. LEXIS 100467, at *10 (S.D.N.Y. July 17, 2013). Moreover, a decision under Education Law § 3020-a is entitled to preclusive effect when the elements of collateral estoppel are satisfied. *See Washington*, 740 Fed. Appx. at 732–33; *see also Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311–12 (2d Cir. 2005). Accordingly, "for findings from a 3020-a proceeding to preclude re-litigation of an issue, 'the issue must have been material to the . . . proceeding and essential to the decision rendered therein.'" *Ferraro v. N.Y.C. Dep't of Educ.*, 752 F. App'x. 70, 73 (2d Cir. 2018) (quoting *Burkybile*, 411 F.3d at 313).

The facts here comfortably allow the application of issue preclusion to bar Plaintiff's claims. The issue presented here is identical to that presented in the two administrative proceedings and the State Court Proceeding, and that issue was actually litigated and decided. The gravamen of Plaintiff's Complaint is that he was charged with misconduct and terminated because Defendant Dorcely harbored animus against him. This issue was litigated in both of the § 3020-a hearings and the State Court Action. Plaintiff specifically raised the defense of retaliation in all three prior proceedings, and Hearing Officers Brown and Williams and Justice Hagler all considered and rejected this defense.

In the 2016 § 3020-a hearing, Plaintiff asserted that the charges should be dismissed because they were conducted "by an administration with a vendetta" against him. *See* Wesley Decl. Ex. A, at 11. To support this argument, Plaintiff principally cited to the Regents exam incident involving Dorcley and a staff meeting held on September 8, 2015: the same two incidents that Plaintiff asserts here to support the retaliation claim. *Id.* at 11, 16–17. Plaintiff's counsel also stressed the retaliation defense during opening and closing arguments and urged the Hearing Officer to dismiss all of the charges precisely because of alleged retaliatory intent behind the charges. *See* Wesley Decl. Ex. B, at T369–371, T776–780. In deciding the appropriate penalty, Hearing Officer Brown specifically took into account the "toxic" relationship between Plaintiff and Dorcley, but nonetheless still found Plaintiff guilty of 10 of the 18 charges, explaining that noting that "the unmistakable thread running through [Plaintiff's] misconduct is his stubborn noncompliance with his administrators' directives." S*ee* Wesley Decl. Ex. A, at 30.

In the 2017 § 3020-a hearing, Plaintiff again asserted that the charges were retaliatory because of his relationship with Dorcely. *See* Wesley Decl. Ex. D, at T1236–1254,

T1335, T1339, T1341–1361, T1377–1388. Although the 2017 § 3020-a hearing concerned two sets of charges—one set concerning allegations brought by Defendant Barnett and Plaintiff's own students at Urban Action Academy, and another set that were initiated by administrators at Middle School of Marketing and Legal Studies—Plaintiff nonetheless testified at length about the alleged cheating incident, the September 8, 2015 staff meeting, the "cooling off" period, and the general relationship between himself and Dorcely to impugn the validity of the charges and support the animus defense. *See id.* at T1236–1254; *see also id.* T1236–1254, T1335, T1339, T1341–1361, T1377–1388. In fact, Plaintiff's emphasis on these events caused the DOE attorney to specifically address the animus defense by pointing out that Plaintiff had received negative feedback from the school he was at prior to Urban Action Academy:

> [Plaintiff] is saying that after the whole grading incident that's when it all went downhill for his relationship with Dorcely. However, the feedback [] he was getting from Dorcely [] was an exact replica of feedback he was getting from another school and a prior administration less than two years before he went to that school.

*Id.* at T1344–1345; *see also id.* T1335–1339. Further, Hearing Officer Williams specifically noted that the relationship between Plaintiff and Dorcely was relevant because: "many of these specifications relate to the Respondent's view of [Dorcely] and [Dorcely] doing his job or not doing his job. So the relationship, in context, is important evidence to know [ ] contextually." *Id.* at T701; *see also id.* T704–705.

However, Hearing Officer Williams concluded that Plaintiff's unprofessional and insubordinate behavior that led to his termination was not connected to any retaliatory conspiracy campaign against Plaintiff but, rather, was due to the fact that:

> Respondent would rather label his students, co-workers, colleagues and supervisor liars/dishonest and co-conspirators than accept responsibility for

> his actions…On this record, I find the employer has demonstrated 'just cause' to terminate the employment of Respondent. I find that it is highly unlikely Respondent can or will correct his behavior. Respondent's failure to acknowledge that his outburst of April 8, 2016, demonstrates a continued denial of wrongdoing and evidences Respondents' lack of understanding that what he did was wrong and must not be continued. Since Respondent does not get the message, his employment is terminated.

Wesley Decl. Ex. C, at 36. Thus, Hearing Officer Williams found Plaintiff guilty of four out of the five specifications and concluded that Plaintiff was guilty of, among other serious charges, verbal abuse about or directed towards students which Plaintiff unleashed in an "avalanche of verbal scorn, disdain, derision, and antipathy." *Id.* at 34–35, 37. The evidence led him to determine that Plaintiff's conduct had "violated so many rules and norms of behavior for a professional educator that it not only had a destructive impact on the students, their emotional health, self-esteem, and respect for educators, it also undermined and was a blow to the entire infrastructure of the education system." *Id.* at 35.

Similarly, Plaintiff's argument in the State Court Proceeding contains the same claims that form the basis of this action, *i.e.*, that the Department of Education's charges against Plaintiff were motivated by a desire to retaliate against the Plaintiff. Although Plaintiff did not specifically allege retaliation in the body of the Article 75 Petition, Plaintiff's counsel characterized the State Court Proceeding during oral argument as being a case about retaliation and that the disciplinary charges brought against him were part of retaliatory "gamesmanship":

> Obviously, Mr. Dorcely wanted [Plaintiff] gone under any purposes and they were going to do whatever it took to get it. And they decided to consolidate and play arbitrators to get the right combination of factors here to get [Plaintiff] fired. The fact is [Plaintiff] would still be teaching if he had not reported the principal for fraud. . . . Mr.

> Severin was a fine teacher who was loved by Mr.
> Dorcely until he reported him for fraud and he's
> being fired because he's a whistleblower. That's all
> this case is really about."

Wesley Decl. Ex. E, at 14:7-26, 15:9-12; *see also* Compl. at ¶ 44 ("Although Plaintiff no longer taught at Urban Action Academy, Principal Dorcely continued his campaign of retaliation against him by causing a second set of Section 3020-a disciplinary charges to be served against him soon after Hearing Brown refused to fire Plaintiff based on the first set of charges.").

Indeed, Justice Hagler also expressly acknowledged that Plaintiff's claim of retaliation was central to his claim, explaining that "[t]he argument that [the] charges were sustained as a result of the animus that the principal had to petitioner really goes to the heart of the issue." *See* Wesley Decl. Ex. F, at 20:5-7.

In each of these proceedings, Plaintiff's pretense allegation that he was improperly retaliated against as a result of reporting testing improprieties by Defendant Dorcely formed an integral part of his defense. In each proceeding, Plaintiff was represented by counsel and had a full and fair opportunity to litigate his disciplinary charges, the basis of those charges, and whether they justified the penalty of termination. Moreover, these proceedings actually and necessarily decided that the charges leading to Plaintiff's termination were not motivated by retaliatory intent. In fact, failure to consider and determine Plaintiff's retaliation defense on the merits would require vacate of the award or the decision. *See Matter of Kowaleski v. New York State Dep't of Correctional Servs.*, 16 N.Y.3d 85, 91 (2010). Therefore, this Court cannot provide relief to Plaintiff without directly contradicting the prior administrative and State court decisions on issues they previously decided and that were necessary to their judgments. *Lafleur*, 300 F.3d at 273.

As the issues presented in this litigation are barred by collateral estoppel, Defendants are entitled to judgment on the pleadings and the Complaint should therefore be dismissed. *See Dolan v. Roth*, 170 F. App'x 743, 746–47 (2d Cir. 2006) (holding that plaintiff was collaterally estopped from relitigating his retaliation claim because the "retaliation issue was properly raised by the pleadings or otherwise placed in issue, and actually determined in the Article 78 proceeding"); *Leftridge v. N.Y. City Dep't of Educ.*, No. 17-cv-7027, 2020 U.S. Dist. LEXIS 55423, at *23–26 (S.D.N.Y. Mar. 30, 2020) (holding teacher collaterally estopped from bringing discrimination claims because § 3020-a hearing and subsequent Article 75 review determined that termination was not based on impermissible discrimination and was justified); *Mazur v. N.Y. City Dep't of Educ.*, 53 F.Supp.3d 618, 630–31 (S.D.N.Y. 2014), *aff'd*, 621 F. App'x. 88 (2d Cir. 2015) (finding collateral estoppel barred teacher's discrimination claims because § 3020-a hearing decided issues with specific reference because they were central to her defenses); *Sank v. City Univ. of N.Y.*, No. 10 Civ. 4975, 2011 U.S. Dist. LEXIS 125016, at *12 (S.D.N.Y. Oct. 28, 2011) (concluding that professor was collaterally estopped from asserting "discrimination or retaliation claims in federal court based upon the very same facts and circumstances" previously raised before the New York State Division of Human Rights and in the Article 78 proceeding).

## POINT II

## PLAINTIFF'S CLAIMS ARE BARRED BY THE DOCTRINE OF RES JUDICATA

The doctrine of res judicata, or claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." *Smith v. City of N.Y.*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). A

defendant asserting res judicata must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Smith*, 130 F.3d at 828.

Plaintiff's claims here are subject to claim preclusion. First, there was a final adjudication on the merits in both § 3020-a hearings and in the State Court Proceeding. Second, the parties involved were the same, as both the Plaintiff and DOE were parties in the previous proceedings and the individual Defendants named in this lawsuit were in privity with the DOE. *See* Wesley Decl. Ex. A, Ex. C, and Ex. E. Lastly, both of the causes of action asserted in Plaintiff's Complaint were asserted at the 2017 § 3020-a hearing that resulted in Plaintiff's termination and in the CPLR Article 75 Petition.

Consequently, Plaintiff's claims are barred by res judicata, entitling Defendants to judgment on the pleadings and dismissal of the Complaint.

### POINT III

### AS DEFENDANTS HAD AN INDEPENDENT BASIS FOR PREFERRING CHARGES, PLAINTIFF DOES NOT HAVE A VIABLE RETALIATION CLAIM UNDER EITHER THE FIRST AMENDMENT OR CIVIL SERVICE LAW § 75-B

To succeed on a claim for First Amendment retaliation, Plaintiff must show that "(i) [his] speech or conduct was protected by the First Amendment; (ii) [he] suffered an adverse employment action"; and (iii) there was a causal connection between the adverse employment action and the protected speech, i.e. that the protected activity was "at least a substantial or motivating factor in the [adverse employment action]." *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 130 (2d Cir. 2013) (internal quotation marks and citations omitted). Similarly, as noted

above, N.Y. Civil Service Law § 75-b prohibits retaliation against a whistleblower who reports improper governmental action. *Matter of Kowaleski*, 16 N.Y.3d at 91.

A defendant, however, can escape liability under the First Amendment if it can demonstrate that it would have taken the same adverse action in the absence of the protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1997); *Zehner v. Jordan-Elbridge Bd. of Educ.*, 666 F. App'x 29, 31 (2d Cir. 2016). Similarly, a claim under Civil Service Law § 75-b "cannot be sustained when a public employer has a separate and independent basis for the action taken." *Brey v. Bd. of Educ. of Jeffersonville-Youngsville Cent. School Dist.*, 245 A.D.2d 613, 615 (3d Dep't 1997); *see Maher v. Town of Stony Point*, No. 16-CV-607 (KMK), 2018 U.S. Dist. LEXIS 169722, at *38–40 (S.D.N.Y. Sept. 28, 2018) (citing cases to the same).

Here, even assuming *arguendo* that Plaintiff's reporting of Defendant Dorcely to SCI/OSI was activity protected by First Amendment and Civil Service Law § 75-b, the incontrovertible evidence amply supports a finding that Defendants would have served Plaintiff with charges in any event based on Plaintiff's egregious misconduct. Contrary to the allegations in Plaintiff's Complaint, the 2017 § 3020-a charges resulting in Plaintiff's termination were not initiated exclusively by Defendant Dorcley. Instead, the record shows that Plaintiff had numerous complaints levied against him by various individuals at two different schools, including students and members of faculty, and that many of the allegations against Plaintiff were investigated by OSI and substantiated. *See generally* Wesley Decl. Ex. C. Indeed, Justice Hagler held that the evidence supported Hearing Officer Williams's finding that Plaintiff made egregious and discriminatory remarks, and noted that, based on Plaintiff's conduct, it would be "shocking if we were to allow a teacher like [Plaintiff] to remain in [a] school . . ." *See* Wesley

Decl. Ex. F, at 20:13-26. In sum, DOE's decision to prefer charges against Plaintiff and seek to terminate his employment was premised on several specifications of serious teacher misconduct, well supported by evidence and testimony, that led two hearing officers and a State court judge to rule against Plaintiff.

The record, therefore, supports a finding that even if Plaintiff had not filed his administrative complaint against Defendant Dorcely, Plaintiff's own misconduct and poor performance—including his use of expletives and discriminatory language in front of students, deriding school policies promoting diversity and inclusiveness in the presence of students, and falling asleep while showing an R-rated animation with adult themes and sexual references to his students—would have led DOE to seek his termination. *See, e.g.*, *Burhans v. Cnty. of Putnam*, No. 06 Civ. 8325 (DLC), 2011 U.S. Dist. LEXIS 31999, at *14–15 (S.D.N.Y. Mar. 25, 2011) ("First Amendment claim must be dismissed to the extent it seeks to recover for the defendants' initiation and prosecution of the [disciplinary] proceedings. Given the independent determination of the hearing officer that there was probable cause to believe [plaintiff] was unfit to perform her job, a decision that [plaintiff] did not challenge through the procedures provided under New York State law, plaintiff is unable as a matter of law to establish a causal connection between her protected speech and the defendants' resort to the [disciplinary] process.").

As Defendants had ample independent grounds for their actions, Plaintiffs' claims cannot be sustained and should be dismissed.

## POINT IV

### PLAINTIFF'S STATE LAW CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

In his Second Cause of Action, Plaintiff alleges a violation of N.Y. Civil Service Law § 75-b. *See* Compl. at ¶ 1. That statute "prohibits a public employer from taking disciplinary

action to retaliate against an employee for reporting improper governmental action." *Matter of Kowaleski*, 16 N.Y.3d at 91. The statute of limitations for such a claim is one year. *Donas v. City of New York*, 62 A.D.3d 504, 505 (1st Dep't 2009).

Here, broadly construed, the alleged retaliatory action must refer to the alleged retaliatory actions taken by Defendant Dorcely, and not to Plaintiff's termination, as the decision to terminate Plaintiff was solely that of Hearing Officer Williams, who is neither a DOE employee nor alleged to have retaliated against Plaintiff.

Dorcely's retaliatory conduct allegedly began after Dorcely found out that Plaintiff was the source of an SCI complaint against him, and at first culminated in May 2016, when Plaintiff was served with the first set of charges. Compl. at ¶¶ 27–39. Plaintiff alleges that he was again subject to retaliatory action in February or March 2017, when he was served with a second set of charges. *Id.* at ¶ 45. No later personnel action is alleged by any Defendant. Plaintiff did not file this action, however, until January 25, 2019, well-after the expiration of the statute of limitations, regardless of which alleged retaliatory action forms the basis of Plaintiff's claim.

As Plaintiff's Second Cause of Action is time-barred, Defendants are entitled to judgment on the pleadings and dismissal of this claim.[4]

---

[4]  Plaintiff's notice of claim, served on October 17, 2017 (Compl. at ¶ 7) -- required by N.Y. Education Law § 3813(1) to be served three months after the claim accrued -- is similarly untimely and warrants dismissal of this claim. *See Professional Detail Service, Inc. v. Board of Education*, 104 A.D.2d 336 (1st Dep't 1984) ("[T]he failure of plaintiff to present a timely verified notice of claim upon the Board or its designees was a fatal defect mandating dismissal of this action.") (internal citations and quotations omitted); *United States v. Locke*, 471 U.S. 84, 101 (1985) ("Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content the deadlines must be enforced.").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that their motion be granted and that Defendants be awarded judgment on the pleadings, and that Defendants be awarded costs, fees, and expenses, together with such other and further relief as this Court deems just and proper.

Dated:      April 30, 2020
             New York, New York


ABRAMS, GORELICK, FRIEDMAN & JACOBSON, LLP
*Attorney for Defendant Jordan Barnett*
One Battery Park Plaza- 4th Floor
New York, NY 10004
(212) 422-1200

JAMES E. JOHNSON
Corporation Counsel of the
   City of New York
*Attorney for Defendants New York City Department of Education, Steven Dorcely, and Michael Prayor*
100 Church Street
New York, New York 10007
(212) 356-2079


By: _____s/_____
     JAMES E. KIMMEL, ESQ.

By: _____s/_____
     LILLIAN P. WESLEY
     Assistant Corporation Counsel


TO:    GLASS & HOGROGIAN, LLP
       *Attorneys for Plaintiff*
       85 Broad Street, 18th Floor
       New York, New York 10004
       (212) 537-6859