```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEAN RICHARD SEVERIN,

               Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION, STEVEN DORCELY, former Principal of Urban Action Academy High School, JORDAN BARNETT, former Assistant Principal of Urban Action Academy High School, and MICHAEL PRAYOR, former Superintendent over Urban Action Academy High School,

               Defendants.

1:19-cv-00775-MKV-RWL

MEMORANDUM
OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Jean Richard Severin ("Plaintiff"), a former New York City public school teacher, has sued Defendants New York City Department of Education ("DOE"), Steven Dorcely, Jordan Barnett, and Michael Prayor (collectively, "Defendants") alleging unlawful retaliation under the First Amendment and New York State law. (*See generally* Compl. [ECF No. 1].) Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Mot. J. Pleadings [ECF No. 33].) For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiff was hired by Defendant Principal Steven Dorcely to teach at Urban Action Academy High School ("UAA"). (Compl. ¶ 18.) Shortly thereafter, Dorcely summoned Plaintiff

---

[1] The following facts are taken from the Complaint and documents submitted in connection with Defendants' motion. On the pending motion, the Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)); *accord Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020); *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017).

1

to a meeting and asked him to review a student's Regents examination with the student because she had failed. (*Id.* ¶ 20.) In this meeting, the student changed her test answers with Dorcely's encouragement. (*Id.* ¶¶ 20–21.) Plaintiff reported this incident to the New York City Special Commissioner of Investigation ("SCI"). (*Id.* ¶¶ 23–24.)

As the investigation unfolded, Dorcely learned that Plaintiff had filed the SCI report. (*Id.* ¶ 27.) Things then went sour between Plaintiff and Dorcely. At a faculty meeting, while looking at Plaintiff, Dorcely informed the staff that a teacher reported him, but he was "back and stronger than ever" and "going to go in beast mode." (*Id.* ¶ 28.) Shortly thereafter, Dorcely approached Plaintiff and threatened, "This year you're done and you're gone, I'm going to . . . you up." (*Id.* ¶ 29.) Plaintiff also alleges that Dorcely physically assaulted him and photographed him without his consent. (*Id.* ¶¶ 30–31.) In addition, Plaintiff began receiving dozens of negative evaluations and disciplinary letters from Dorcely and the UAA administration, despite receiving positive assessments the prior year. (*Id.* ¶ 32–35.) A meeting was held with Plaintiff, Dorcely, and Superintendent Michael Prayor where they agreed to a "cooling off" period during which Dorcely would not contact or otherwise interact with Plaintiff. (*Id.* ¶ 37.)

Months later, Plaintiff was served with 18 disciplinary specifications under New York Education Law Section 3020-a seeking termination of his employment, initiated by Dorcely. (*Id.* ¶ 39.) Hearing Officer James Brown conducted a six-day hearing where the parties submitted evidence and argument in support of their positions. (Wesley Decl. Ex. A at 2 [ECF No. 35-1].) Plaintiff claimed that the administration had a "vendetta" against him and that "he was disciplined 'in retaliation for filing the SCI report that Principal Dorcely engaged or attempted to engage in testing irregularities.'" (*Id.* at 11, 16.) Plaintiff's counsel stressed this retaliatory defense during

2

opening and closing arguments, urging Hearing Officer Brown to dismiss all of the specifications. (Wesley Decl. Ex. B at 369:14–371:5, 776:19–828:8 [ECF No. 35-2].)

Hearing Officer Brown found Plaintiff guilty of 10 of the specifications, including failure to attend work meetings; failure to submit his mid-term exam to the administration for feedback and review; failure to inform the administration of absences; and failure to follow various directives by administrators. (*See generally* Wesley Decl. Ex. A.) Hearing Officer Brown outlined Plaintiff's retaliatory defense (*id.* at 11, 16–17) and noted the "truly dysfunctional" and "toxic" relationship between Dorcely and Plaintiff, but ultimately concluded that "the unmistakable thread running through [Plaintiff's] misconduct is his stubborn noncompliance with his administrators' directives" (*id.* at 30). Plaintiff was fined $2,000 for his misconduct. (*Id.* at 30–31.)

Thereafter, Plaintiff was permanently reassigned from UAA, first to the Absent Teacher Reserve pool as a roving substitute teacher (Compl. ¶ 43) and then to Middle School for Marketing and Legal Studies ("MLS") (Wesley Decl. Ex. C at 2, 27 [ECF No. 35-3]). Notwithstanding Plaintiff's reassignment, Dorcely allegedly "continued his campaign of retaliation against [Plaintiff]." (Compl. ¶ 44.) Plaintiff was served with additional specifications, including charges that related back to his time UAA. (Compl. ¶¶ 44–45; Wesley Decl. Ex. C at 3–6.) Plaintiff was charged with, *inter alia*, using expletives and discriminatory language, allowing minor students to view an inappropriate television show, allowing students to listen to music with explicit lyrical content, frequently sleeping on the job, and excessive lateness. (Wesley Decl. Ex. C at 3–6.) The DOE sought Plaintiff's termination as a penalty. (*Id.* at 2.)

Hearing Officer Richard Williams presided over a ten-day hearing regarding the latest specifications. (*Id.*) Plaintiff testified extensively about Dorcely's alleged animus toward him

following the Regents exam incident. (*See* Wesley Decl. Ex. D at 1236:15–1254:15, 1339:6–1362:24 [ECF No. 35-4].)

Hearing Officer Williams ultimately found that Plaintiff engaged in the following misconduct: First, during "spirit week" at UAA, in referencing boys dressing up as girls, Plaintiff remarked to students, "This is not okay and/or This is not right"; "The school is promoting gays"; "The boys are dressed up like trannies"; and "This is a disgrace." (Wesley Decl. Ex. C at 19–20.) Second, Plaintiff stated to students at UAA: "This school is bullshit"; Dorcely is "dumb," "an asshole," and a "[p]iece of shit principal"; and "This piece of shit [Dorcely] lets students walk around dressing like girls." (*Id.* at 20–21.) Third, without permission from the UAA administration, Plaintiff permitted his minor students to watch *The Boondocks*, an R-rated animated sitcom with adult themes and pervasive language and sexual references. (*Id.* at 22–23.) Plaintiff also permitted his students to listen to a song called "Dick Riding" with sexually explicit lyrical content. (*Id.*) Fourth, at both UAA and MLS, Plaintiff was observed sleeping or in a relaxed position during work hours and instructional time. (*Id.* at 21–22, 26–27.) Fifth, Plaintiff failed to comply with MLS protocols and procedures as well as directives from the administration. (*Id.* at 27–30.) Finally, Plaintiff was late to work several times while at MLS. (*Id.* at 31.)

Hearing Officer Williams explained that Plaintiff's misconduct evidenced his "unprofessionalism, extremely poor judgment, lack of control, lack of restraint, impulsiveness, and unwillingness to accept the demands of his position." (*Id.* at 36.) He emphasized Plaintiff's "frustration stemming from his personal animosity towards Principal Dorcely," noting that "[a]t the crux of [Plaintiff's] misconduct is a personal inability to let his resentment go." (*Id.* at 35–36.) Hearing Officer Williams found it "highly unlikely [Plaintiff] can or will correct his behavior" given his "continued denial of wrongdoing" and "lack of understanding that what he did was

4

wrong." (*Id.* at 36.)  Accordingly, Hearing Officer Williams terminated Plaintiff's employment. (*Id.*)

Shortly thereafter, Plaintiff commenced an action under Article 75 of the New York Civil Practice Law and Rules in the Supreme Court of the State of New York, New York County, challenging Hearing Officer Williams's decision.  *Severin v. Dep't of Educ.*, Index No. 655086/2017 (Sup. Ct. N.Y. Cty.) (Hagler, *J.*).  (Wesley Decl. Ex. E [ECF No. 35-5].)  Plaintiff argued that the decision was arbitrary and capricious, imposed an excessive penalty, and violated his due process rights. (*Id.* at 1.)  In particular, Plaintiff argued that the charges in the second set of specifications arising from his time at UAA should have been adjudicated with the first set of specifications so that his previously spotless record could have mitigated the more serious charges in the second set. (*Id.* ¶ 27.)

At oral argument before Justice Hagler, Plaintiff stressed that he was the victim of retaliation.  Plaintiff's counsel asked Justice Hagler to "realize that [Plaintiff] has lost his job because he was a whistleblower" and that Plaintiff "had no issues until, you know, he antagonized the principal [by] reporting him for misconduct." (*Id.* at 6:14–6:19.)  Counsel argued that "Mr. Dorcely wanted [Plaintiff] gone" and "decided to consolidate and play arbitrator[] to get the right combination of factors here to get [Plaintiff] fired." (Wesley Decl. Ex. F at 14:16–14:20 [ECF No. 35-6].)  Counsel continued:

> The fact is [Plaintiff] would still be teaching if he had not reported the principal for fraud. . . . [Plaintiff] has been the victim of reporting — he's a whistleblower and he's being terminated because he's a whistleblower and the board knows how to play the games with charges. . . . [Plaintiff] was a fine teacher who was loved by Mr. Dorcely until he reported him for fraud and he's being fired because he's a whistleblower.  That's all this case is really about.

(*Id.* at 14:20–15:12.)  Justice Hagler, however, noted that the papers did not reflect "an argument as strong as [counsel] just made that the principal was out to get the petitioner." (*Id.* at 9:18–9:21.) And counsel for the DOE argued that there were no retaliation-based arguments in the petition and that they should not be considered.  (*Id.* at 10:18–10:20, 15:19–15:21.)

Justice Hagler dismissed Plaintiff's petition in its entirety.  He explained that the alleged retaliation "really goes to the heart of the issue." (*Id.* at 20:7.)  Nevertheless, Justice Hagler found that the record adequately supported Hearing Officer Williams's holding.  (*Id.* at 20:13–20:20.) Justice Hagler explained that the findings are "unbecoming of a teacher and have no place in our society, let alone in a place of higher learning." (*Id.* at 20:21–20:23.)

Plaintiff commenced this action nearly two years later, alleging unlawful retaliation under the First Amendment and New York Civil Service Law Section 75-b.  (Compl. ¶¶ 48–55.) Defendants moved for judgment on the pleadings on the grounds that Plaintiff's causes of action are barred by the doctrines of collateral estoppel and *res judicata* and otherwise fail to state a claim as a matter of law.  (Mot. J. Pleadings; Defs.' Br. [ECF No. 34].)  In support of their motion, Defendants filed a declaration containing the decisions and transcripts of Plaintiff's Section 3020-a proceedings, Plaintiff's state court filings, and the transcript of the proceeding before Justice Hagler.  (Wesley Decl. [ECF No. 35].)  Plaintiff filed an opposition (Opp. [ECF No. 38]), and Defendants filed a reply (Reply [ECF No. 41]).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a 12(c) motion, courts apply the same standards as those used for a motion to dismiss pursuant to Rule 12(b)(6).  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011)

6

(quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

On Defendants' Rule 12(c) motion, "the Court may consider documents attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiffs [sic] possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken." *Hargrove v. N.Y.C. Sch. Constr. Auth.*, No. 11–CV–06344 (CBA)(LB), 2013 WL 2285173, at *4 (E.D.N.Y. May 23, 2013) (citing *Chambers v. Time Warner. Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *accord L-7 Designs*, 647 F.3d at 422. The Court may take judicial notice of public filings and administrative decisions. *Hasan v. Onondaga County*, No. 5:18-CV-806 (ATB), 2020 WL 1529962, at *4 (N.D.N.Y. Mar. 30, 2020) (collecting cases). When taking judicial notice of such documents, the Court does so "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1991)).

In deciding Defendants' motion, the Court may consider the decisions and transcripts of Plaintiff's Section 3020-a proceedings, Plaintiff's state court filings, and the transcript of the hearing before Justice Hagler because they are referenced in the Complaint, Plaintiff relied on and had knowledge of them in bringing this action, or they are matters of which judicial notice may be

taken. *See Arroyo v. Dep't of Educ. of City of N.Y.*, No. 19 Civ. 7416 (ER), 2020 WL 4570380, at *7 (S.D.N.Y. Aug. 6, 2020); *Moore v. City of New York*, No. 08 Civ. 8879(PGG), 2010 WL 742981, at *3 (S.D.N.Y. Mar. 2, 2010).

## **DISCUSSION**

Defendants seek judgment on the pleadings on the following grounds: (1) Plaintiff's state law claim is barred by the statute of limitations; (2) Plaintiff's claims are barred by the doctrine of collateral estoppel; (3) Plaintiff's claims are barred by the doctrine of *res judicata*; and (4) Plaintiff's claims fail as a matter of law because Defendants had an independent basis for serving Plaintiff with disciplinary specifications. (*See generally* Defs.' Br.)

### **A. Plaintiff's State Law Claim Is Time-Barred**

Plaintiff brings a claim under New York Civil Service Law Section 75-b(2)(a). (Compl. ¶ 52.) This statute "prohibits a public employer from taking disciplinary action to retaliate against an employee for reporting 'improper governmental action.'" *In re Kowaleski*, 16 N.Y.3d 85, 91, 942 N.E. 2d 291, 917 N.Y.S.2d 82 (2010) (quoting N.Y. Civ. Serv. Law § 75-b(2)(a)). Claims under Section 75-b are subject to a one-year statute of limitations. *Donas v. City of New York*, 62 A.D.3d 504, 505, 878 N.Y.S.2d 360 (1st Dep't 2009) (citing N.Y. Civ. Serv. Law § 75-b(3)(c); and N.Y. Lab. Law § 740(4)(a)); *see also Peterson v. N.Y.C. Dep't of Educ.*, No. 18-CV-1515 (ILG), 2020 WL 2559835, at *8 (E.D.N.Y. May 20, 2020) ("No action may be commenced against the DOE 'more than one year after the cause of action arose.'" (quoting N.Y. Educ. Law § 3813(2-b))). Plaintiff alleges that he was terminated in July 2017 (Compl. ¶ 46), and Plaintiff commenced this action in January 2019. As such, Plaintiff's Section 75-b claim is time-barred. Accordingly, the Court grants Defendants' motion with respect to Count II of the Complaint.

**B. Plaintiff's First Amendment Claim Is Not Barred by Collateral Estoppel**

The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating a factual or legal issue that the party previously litigated and lost in an earlier action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). The doctrine applies regardless of whether the proceedings are based on the same cause of action. *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) (collecting sources). The party invoking collateral estoppel must "clearly establish" the basis for its application. *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006) (first citing *Jeffreys v. Griffin*, 1 N.Y.3d 34, 39, 769 N.Y.S.2d 184, 801 N.E.2d 404 (2003); then citing *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).

Federal courts apply the collateral estoppel rules of the state that rendered the earlier judgment. *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985)); *see also LaFleur*, 300 F.3d at 271; *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001). An issue that is "necessarily decided" must have been "actually decided" and "necessary to support a valid and final judgment on the merits." *Beechwood*, 436 F.3d at 153 (citing *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999); and *Wilder v. Thomas*, 854 F.2d 605, 620 (2d Cir. 1988)).

"New York courts will give administrative determinations preclusive effect if made in a quasi-judicial capacity and with a full and fair opportunity to litigate the issue." *Burkybile v. Bd.*

*of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 312 (2d Cir. 2005) (citing *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 498–502, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984)). A "Section 3020-a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect" if the criteria of collateral estoppel are met. *Id.* at 308, 311–14.

Defendants argue that the issue of retaliation was actually and necessarily decided in the Section 3020-a hearings and the Article 75 proceeding because Plaintiff's retaliation defense was argued, considered, and ultimately rejected. (Defs.' Br. 9–15.) This exact argument has been squarely rejected by the Second Circuit. *See Beechwood*, 436 F.3d at 152–53.

Here, "under state law, the only finding necessary to support a valid judgment in the administrative hearing was that the [DOE] was not *solely* motivated by retaliatory animus against [Plaintiff] for initiating disciplinary action against him." *Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 46 (2d Cir. 2012) (summary order) (citing N.Y. Civil Service Law § 75–b(3)); *see also Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 215 (E.D.N.Y. 2013). To make out a First Amendment retaliation claim, Plaintiff "need only establish that the protected activity was a substantial or motivating factor for the adverse employment action." *Dillon*, 917 F. Supp. 2d at 215. Indeed, "a plaintiff can prove First Amendment retaliation even if the measures taken by the state were otherwise justified." *Beechwood*, 436 F.3d at 152 (collecting cases); *Broich*, 462 F. App'x at 46 n.4 ("That the [defendants] had sufficient justification to bring charges against [plaintiff] does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus." (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 & n.8 (2d Cir. 1987))). Thus, while Plaintiff may have engaged in misconduct to justify his termination, Defendants' actions may still have been motivated by Plaintiff's protected First Amendment activity and, therefore, Defendants' actions may still have been unlawful. *Morey*

*v. Somers Cent. Sch. Dist.*, No. 06 Civ. 1877(WCC), 2007 WL 867203, at *7 (S.D.N.Y. Mar. 21, 2007) (collecting cases). Because the issue of retaliation was not necessary to the earlier decisions, Plaintiff's retaliation claims are not barred by collateral estoppel. *See Beechwood*, 436 F.3d at 153; *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 616–617 (S.D.N.Y. 2015); *Dillon*, 917 F. Supp. 2d at 216; *Saunders v. N.Y.C. Dep't of Educ.*, No. 07 CV 2725(SJF)(LB), 2010 WL 2985031, at *4 (E.D.N.Y. July 20, 2010); *Morey*, 2007 WL 867203, at *7–8; *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 785–86 (S.D.N.Y. 2003).

### C. Plaintiff's First Amendment Claim Is Not Barred by *Res Judicata*

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)); *accord Allen v. McCurry*, 449 U.S. 90, 94 (1980). The party invoking *res judicata* bears the burden of demonstrating that it applies. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997) (citing *Thomas v. New York City*, 814 F. Supp. 1139, 1148 (E.D.N.Y. 1993)).

Application of *res judicata* requires a showing that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same adverse parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (alteration in original) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)); *see also Soules v. Connecticut*, 882 F.3d 52, 55 (2d Cir. 2018); *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000). Under New York law, the use of *res judicata* "is limited to situations where the initial forum had the power to award the full

measure of relief sought in the later litigation." *Antonsen v. Ward*, 943 F.2d 198, 200 (2d Cir. 1991) (citing *Heimbach v. Chu*, 744 F.2d 11, 14 (2d Cir.1984); and *McLearn v. Cowen & Co.*, 48 N.Y.2d 696, 698, 422 N.Y.S.2d 60, 397 N.E.2d 750 (1979)). Thus, the doctrine does not apply where the plaintiff could not seek a particular remedy in the earlier action because of restrictions on the authority of the court or tribunal to entertain a certain remedy and the plaintiff desires to seek that remedy in the later action. *Washington v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 9588 (ER), 2017 WL 4687982, at *9 (S.D.N.Y. Oct. 16, 2017) (quoting *Latino Officers*, 253 F. Supp. 2d at 781).

Defendants have failed to demonstrate that *res judicata* applies. Regarding the third element, Defendants argue that "both of the causes of action asserted in Plaintiff's Complaint were asserted at the 2017 § 3020-a hearing that resulted in Plaintiff's termination and in the CPLR Article 75 Petition." (Defs.' Br. 16.) But Plaintiff's asserting retaliatory defenses is not the same as asserting affirmative claims for relief. *See Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, 751 F. App'x 24, 27 (2d Cir. 2018) (summary order). Defendants provide no authority for the proposition that Plaintiff could have asserted his retaliation *claims* in the Section 3020-a proceedings. In addition, "Defendants make no effort to explain how the Article 75 court could have reached [Plaintiff's constitutional] claim[], given that under Article 75, '[g]rounds for vacating an award are narrowly circumscribed and include corruption, fraud or misconduct, partiality of an arbitrator, or abuse of discretion.'" *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817 (AT) (GWG), 2019 WL 3432306, at *6 (S.D.N.Y. July 31, 2019) (quoting *Bottini v. Sadore Mgmt. Corp.*, 764 F.2d 116, 121 (2d Cir. 1985)), *report & recommendation adopted*, 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019); *see Bottini*, 764 F.2d at 121 (finding that prior Article 75 proceeding did not preclude plaintiff from pursuing religious discrimination claim because the court lacked the power to entertain the claim); *Sewell v. N.Y.C. Transit Auth.*, 809 F. Supp. 208,

215 (E.D.N.Y. 1992) (holding that "res judicata does not bar the Title VII and § 1983 claims as they were not, nor could they have been, raised in the Article 75 proceeding"). Accordingly, application of *res judicata* is unwarranted.

## D.  First Amendment Retaliation Claim

A plaintiff claiming First Amendment retaliation must demonstrate that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, 'so that it can be said that his speech was a motivating factor in the determination.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (quoting *Morris v. Lindau*, 196 F.3d 102, 109–10 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012)). Even where a plaintiff satisfies these three elements, a defendant may escape liability by showing by a preponderance of the evidence that it would have taken the same adverse employment action in the absence of the protected speech. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Mandell*, 316 F.3d at 382 (citing *Morris*, 196 F.3d at 110).

Defendants do not contest whether Plaintiff has plausibly stated a First Amendment retaliation claim. Rather, they argue that even if he has, they are not subject to liability because Plaintiff's misconduct provided adequate, independent grounds to serve him with disciplinary specifications. (Defs.' Br. 16–18.) Put differently, Plaintiff would have been served with disciplinary specifications regardless of whether he reported the Regents exam incident to the SCI, and therefore, Plaintiff's claim should be dismissed.

The factual findings at Plaintiff's Section 3020-a hearings are entitled to preclusive effect. *See, e.g.*, *Burkybile*, 411 F.3d at 313; *Fischer v. N.Y.C. Dep't of Educ.*, 666 F. Supp. 2d 309, 320 (E.D.N.Y. 2009). The Court thus accepts the findings of Hearing Officers Brown and Williams

that Plaintiff engaged in misconduct as described in their decisions. Nevertheless, the factual findings that Plaintiff engaged in misconduct do not decisively prove that Defendants would have taken the same actions regardless of Plaintiff's allegedly protected speech. *Deprima v. City of N.Y. Dep't of Educ.*, No. 12 CV 3626(MKB)(LB), 2014 WL 1159856, *6 (E.D.N.Y. Jan. 15, 2014), *report & recommendation adopted*, 2014 WL 1155282 (E.D.N.Y. Mar. 20, 2014).

Termination for cause does not necessarily preclude the prospect of termination motved by unlawful animus or retaliatory intent. *Leon v. N.Y.C. Dep't of Educ.*, 612 F. App'x 632, 635 (2d Cir. 2015) (summary order). As the Second Circuit has explained:

> the hearing officer's determination that [the plaintiff] had engaged in the charged conduct, and that these violations called for his termination, does not preclude a jury from later finding that [the plaintiff] was also terminated at least in part because of [retaliatory reasons]. The plaintiff could be successful on the [retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating him, too.

*Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014). Accordingly, "Even if Plaintiff cannot dispute the factual findings of the Hearing Officer[s'] decision[s], Plaintiff can still prevail if he shows that Defendants acted with an improper motive in bringing charges against Plaintiff." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 472 (S.D.N.Y. 2011) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)); *see Waters v. Churchill*, 511 U.S. 661, 681 (1994) (plurality opinion) (denying summary judgment where defendants "would have been justified in firing [plaintiff] for [certain] statements" but there was a genuine issue of material fact as to defendants' "actual motivation").

A *Mount Healthy* defense—that a defendant would have taken the same adverse action in the absence of the protected speech—is highly fact-intensive. *See Sher v. Coughlin*, 739 F.2d 77, 82 (2d Cir. 1984) (noting that a "determination of th[e] issue of hypothetical causation requires fact-finding"); *see also Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) (noting that "the

14

motive behind [plaintiff's] firing in his retaliation claim is clearly a question of fact" (citing *Frank v. Relin*, 1 F.3d 1317, 1328–29 (2d. Cir. 1993))).  As such, dismissal of a First Amendment retaliation claim based on a *Mount Healthy* defense is generally not appropriate at this early stage in the litigation.  *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order) ("*Mt. Healthy* sets forth the appropriate standard for a § 1983 claim at trial, not for a motion to dismiss based on the pleadings."); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006) (noting that consideration of *Mount Healthy* defense "is premature on defendant's motion to dismiss"); *see also Kohutka v. Town of Hempstead*, 11-cv-1882 (ADS)(WDW), 2012 WL 13109880, at *8 (E.D.N.Y. Mar. 20, 2012) (noting that whether defendants would have taken the same adverse employment actions "cannot be properly answered" at the motion to dismiss stage (citing *Anemone*, 410 F. Supp. 2d at 267)); *Kelly v. Huntington Union Free Sch. Dist.*, 675 F. Supp. 2d 283, 298 (E.D.N.Y. 2009) ("The factual question of defendants' motivation is also inappropriate at th[e] [motion to dismiss stage]." (citing *Sheppard*, 18 F.3d at 151)).  Defendants do not cite one case where a motion to dismiss or for judgment on the pleadings was granted based on a *Mount Healthy* defense.

Several allegations in Plaintiff's Complaint, accepted as true, permit a reasonable inference that Defendants' disciplinary actions against Plaintiff resulted from a retaliatory motive.  After learning that Plaintiff had filed the SCI report, Dorcely announced to the faculty, while looking at Plaintiff, that a teacher had reported him, but he is "back and stronger than ever and he is going to go in beast mode."  (Compl. ¶ 28.)  Dorcely directly threatened Plaintiff that he was "done" and "gone."  (*Id.* ¶ 29.)  *Cf. Beechwood*, 436 F.3d at 153–54 (noting correspondence that suggested defendants' "hostile pursuit of [plaintiffs] was motivated by an intent to punish [plaintiffs] for exercising First Amendment rights of speech").  Plaintiff also alleges that Dorcely physically

15

assaulted him. (*Id.* ¶ 30.) Over the next three months, Plaintiff was slapped with dozens of negative evaluations and disciplinary letters from Dorcely and the administration. (Compl. ¶ 34.) Plaintiff began receiving "Ineffective" evaluations in every category, despite consistently having received "Effective" ratings the previous school year. (Compl. ¶¶ 32–33.) In addition, Plaintiff was summoned to multiple disciplinary meetings with the administration over "trivial and fabricated allegations against him." (Compl. ¶ 35.) Finally, a couple months before Plaintiff was served with the first set of specifications, Dorcely threatened to pursue Section 3020-a disciplinary charges seeking Plaintiff's termination. (Compl. ¶ 38.)

Accepting these allegations as true and drawing reasonable inferences in Plaintiff's favor, as the Court must on the pending motion, it is plausible that the serving on Plaintiff of disciplinary specifications—albeit sustained in the Section 3020-a hearings and upheld in the Article 75 proceeding—was motivated in part by Defendants' unlawful animus. *See Matusick*, 757 F.3d at 47; *Dillon*, 917 F. Supp. 2d at 216. Accordingly, the Court declines to dismiss Plaintiff's First Amendment retaliation at this juncture. *See Sheppard*, 18 F.3d at 151 (reversing dismissal of First Amendment retaliation claim on motion for judgment on the pleadings given factual dispute over defendants' motive behind plaintiff's firing).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for judgment on the pleadings. The Court dismisses Count II of the Complaint. The Clerk of Court is respectfully requested to terminate docket entry 33.

**SO ORDERED.**

Date:  **March 31, 2021**                                  **MARY KAY VYSKOCIL**
       **New York, NY**                                      **United States District Judge**