FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59                                              RECEIVED NYSCEF: 07/28/2017

NEW YORK STATE EDUCATION DEPARTMENT
-------------------------------------------------------------------- X
In the Matter of the Disciplinary Charges Preferred by
                                                                     X
THE NEW YORK CITY DEPARTMENT OF                    Case No. 29,298
EDUCATION,                                                           X
                                  "Department,"           **OPINION AND AWARD**
                                                                     X
- against -
                                                                     X
JEAN RICHARD SEVERIN,
                                                                     X
                                  "Respondent."
                                                                     X
Pursuant to Education Law § 3020-a
-------------------------------------------------------------------- X


**APPEARANCES**

**FOR THE DEPARTMENT**
HOWARD FRIEDMAN, GENERAL COUNSEL TO THE CHANCELLOR
    Michael A. Francis, Esq., of Counsel
    Dana Kim, Esq., of Counsel


**FOR THE RESPONDENT**
MASSENA LAW, P.C.
    Alain Massena, Esq.,


BEFORE: James A. Brown, Esq., Hearing Officer

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59    Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 3 of 32    RECEIVED NYSCEF: 07/28/2017

## BACKGROUND

The Department preferred charges against Respondent, Jean Richard Severin, a tenured teacher recently assigned to the Urban Action Academy within District 18 in Brooklyn, New York ("the school"). By notice dated May 17, 2016, issued by the New York State Education Department, I was appointed to serve as the Hearing Officer. A pre-hearing conference was held on May 24, 2016. On that occasion, the parties addressed matters concerning document production and scheduling.

The hearings were conducted on June 24, 29, July 12, 14, 25 and August 9, 2016 at the offices of the Department of Education in New York, New York. At said hearings, both parties were afforded the opportunity to introduce evidence and argument in support of their respective positions. A stenographic record of the pre-hearing conference and the hearings was taken. The following witnesses testified for the Department: Assistant Principal Jordan Barnett and Principal Steve Dorcely. Respondent called the following witnesses: Superintendent Michael Prayor, UFT Chapter Leader and teacher Mark Satchell, UFT District Representative James Duncan, and the Respondent also appeared as a witness on his own behalf.

At the conclusion of the August 9th hearing, the record was declared closed upon my receipt of the hard copy of the final hearing transcript (which I received on August 15, 2016).

NYCDOE00197

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59                                              RECEIVED NYSCEF: 07/28/2017

Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 4 of 32

## CHARGES AND PARTIES' POSITIONS

I. **The Charges and Specifications:**

The Specifications against Respondent read as follows:

### SPECIFICATIONS

1) On or about April 4, 2016, Respondent signed out and left the school building without approval at 12:20 p.m. and did not return to his post assignments (period 7 prep and period 8 law class).

2) On or about February 5, 2016, Respondent failed to adhere to the school's Cell Phone Policy when he allowed students to use their cell phones during his period 3 class.

3) On or about December 23, 2015, during period 6, Respondent failed to attend and participate in his Common Planning Meeting with the social studies department.

4) On or about November 25, 2015, Respondent failed to adhere to school policy and/or written directives from school administrators to keep one set of lights on in the classroom during the viewing of a video or movie.

5) During the 2015-2016 school year, Respondent, as of December 15, 2015, had failed to attend at least twenty-nine (29) out of thirty-seven (37) mandated professional C6 assignment "Common Planning Time" meetings, on or about the following dates:

   1)  Tuesday October 20, 2015
   2)  Wednesday October 21, 2015
   3)  Thursday October 22, 2015
   4)  Tuesday October 27, 2015
   5)  Wednesday October 28, 2015
   6)  Friday October 30, 2015
   7)  Monday November 2, 2015
   8)  Wednesday November 4, 2015
   9)  Thursday November 5, 2015
   10) Friday November 6, 2015
   11) Monday November 9, 2015
   12) Tuesday November 10, 2015
   13) Wednesday November 11, 2015
   14) Thursday November 12, 2015
   15) Friday November 13, 2015
   16) Monday November 16, 2015

NYCDOE00198

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM  INDEX NO. 655086/2017
NYSCEF DOC. NO. 59  RECEIVED NYSCEF: 00/28/2017

Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 5 of 32

17) Tuesday November 17, 2015
18) Wednesday November 18, 2015
19) Thursday November 19, 2015
20) Friday November 20, 2015
21) Monday November 23, 2015
22) Wednesday November 25, 2015
23) Monday November 30, 2015
24) Tuesday December 1, 2015
25) Thursday December 3, 2015
26) Monday December 7, 2015
27) Wednesday December 9, 2015
28) Thursday December 10, 2015
29) Tuesday December 15, 2015

6) On or about November 12, 2015, Respondent left the school building during the school day without signing the Teacher Log in the school's Main Office.

7) On or about November 9, 2015, Respondent failed to follow a directive given by administration to submit his mid-term exam for feedback and review to administration.

8) On or about November 4, 2015, Respondent permitted a student to reenter the school building through exits 1 and 2, instead of entering through the Main Entrance, where the student would have been subjected to scanning.

9) On or about October 23, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.

10) On or about October 26, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.

11) On or about November 22, 2015, Respondent failed to follow a directive given by administration to supply period 2 lesson plans for three (3) weeks to administration.

12) On or about September 11, 2015, Respondent failed to follow a directive given by administration to have the following:

   1. a lesson plan readily available upon request of an administrator;
   2. an Instructional Objective followed by a time stamp agenda listing the skills and standards the lesson would be addressing on the board/SmartBoard.

13) On or about June 15, 2015, Respondent failed to follow a directive given by administration to supply Marking Period 3 and 4 Electronic Grades Gathering (EGG) Files by the due date and time, which was June 15, 2015 at 3:00 pm.

4

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59                                      RECEIVED NYSCEF: 00/28/2017

Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 6 of 32

14) On or about May 29, 2015, Respondent failed to follow a directive given by administration to supply Marking Period 2 Electronic Grades Gathering (EGG) Files by the due date and time, which was May 29, 2015 at 3:00 pm.

15) On or about April 23, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.

16) On or about February 12, 2015, Respondent failed to have on file three (3) Emergency Lesson Plans.

17) On or about January 5, 2015, Respondent failed to follow a directive given by administration to supply weekly lesson plans to administration.

18) On or about January 5, 2015, Respondent failed to follow a directive given by administration to schedule four (4) instructional support sessions.

THE FOREGOING CONSTITUTES:

- Just cause for Disciplinary action pursuant to Section 3020-a of the Education Law;
- Substantial cause rendering Respondent unfit to perform his obligations properly to the service;
- Neglect of Duty;
- Misconduct;
- Insubordination;
- Conduct unbecoming Respondent's position, or conduct prejudicial to the good order, efficiency, or discipline of the service;
- A violation of the by-laws, rules and regulations of the Chancellor, Department, School or District;
- Just Cause for termination.

II. **The Parties' Positions:**

**The Department's Position:** The Department contends that Respondent engaged in a "pattern of deliberate misconduct by failing to follow school policies and administrators' directives," and that he "stubbornly" claims to be a victim of retaliation after reporting the Principal for "alleged cheating." (Tr. 829). The Department notes that Respondent also filed a Special Complaint, "several weeks after the Respondent had already been served" with

5

NYCDOE00200

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59                                              RECEIVED NYSCEF: 07/28/2017

disciplinary charges, which was deemed "unsubstantiated or unfounded" in a process "agreed upon by both the UFT and DOE." (Tr. 829-830, 834). In sum, the Department argues that Respondent's "unfounded allegations" against the Principal are "much ado about nothing and a desperate attempt by him to try to cover up and deflect blame for his deliberate insubordination and misconduct." (Tr. 832).

As for the particular Specifications, the Department contends that Respondent exited the school building without approval on April 4, 2016 (Specification 1). In support, the Department cites Respondent's own testimony that he exited early on April 4th and was aware of the "protocol" that "if you set foot off campus, you have to sign out." (Tr. 835). The Department also submits that Respondent "straight up lied" when he explained that he was instructed to only communicate with school secretary Townes. (Tr. 836).

As for Respondent's alleged February 5, 2016 violation of school policy regarding student cell phone usage (Specification 2), the Department relies on the Principal's testimony that he saw students using their cell phones in Respondent's classroom, and also on the students' handwritten statements. (Tr. 836-837). The Department notes that Respondent's co-teacher also received a letter to file in connection with the incident. (Tr. 837).

Regarding Respondent's alleged failure to attend various common planning meetings (Specifications 3 and 5), the Department relies on a sign-in sheet (Department Exhibit 14) showing Respondent's absence on December 23, 2015. As for the other missed common planning meetings from October through December 2015, the Department contends that the disciplinary conferences which Respondent claims were scheduling conflicts "took no more than ten minutes." The Department adds that Respondent was

6

NYCDOE00201

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                              RECEIVED NYSCEF: 07/28/2017

expected, after his disciplinary conferences ended, "to return to or to attend the common planning meeting with his team." (Tr. 842). Also, the disciplinary conferences did not always present potential conflicts because Respondent's UFT Chapter Leader sometimes appeared at the conferences without Respondent. (Tr. 843). As for Respondent's other defense that he didn't always sign in when attending common planning meetings, the Department responds: "He didn't sign in because he didn't attend those meetings, plain and simple." (Tr. 842-843).

The Department also asserts that Respondent turned off all of his classroom lights on November 25, 2015 while his students viewed a video (Specification 4). In support, the Department relies on the Principal's testimony that he viewed Respondent's darkened classroom during a video presentation which appeared to be a "nap session" for some students. (Tr. 844). The Department adds that it "doesn't need to put a teacher on notice for something that is common sense." (Tr. 844).

As for the allegation that Respondent exited the school building on November 12, 2015 without signing the teacher log (Specification 6), the Department relies on the letter to Respondent's file (Department Exhibit 19) in which the Principal states that Respondent was observed leaving the school building and did not sign the teacher log. (Tr. 846-847).

The Department also maintains that Respondent did not follow a directive to submit his midterm exam to administrators for feedback and review on November 9, 2015 (Specification 7). In support, the Department cites the Principal's testimony that he never received the midterm exam from Respondent who received notice of the directive. (Tr. 847). The Department also highlights Respondent's contradictory testimony in which he ultimately explained that his co-teacher submitted the midterm exam to the Principal. (Tr.

7

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59                                              RECEIVED NYSCEF: 00/28/2017

847-848).

As for the allegation that Respondent permitted a student on November 4, 2015 to reenter the school building through an entrance other than the main entrance (Specification 8), the Department relies on "credible hearsay evidence" including a student's letter. (Department Exhibit 21). The Department also relies on the Principal's testimony that Respondent was observed on camera by an Assistant Principal and was also observed in person by another Principal assigned within the same school building. (Tr. 849).

Regarding the allegations that Respondent failed to contact the main office or supervision to advise of his absences on April 23, October 23 and 26, 2015 (Specifications 9, 10 and 15), the Department maintains that the Faculty/Staff Handbooks (which Respondent admitted that he read) placed Respondent on notice of this reporting obligation. (Department Exhibits 8 and 9; Tr. 850). The Department also notes that the June 12, 2015 letter to Respondent's file (Department Exhibit 26) placed Respondent on additional notice of this reporting obligation. According to the Department, Respondent only admitted that he knew of the reporting requirement when he was confronted, during the hearing, with the June 12th letter. (Tr. 851-852). The Department argues that Respondent's failure to notify the school of his absences "shows a pattern of willful insubordination and a disregard for directives." (Tr. 852-853).

The Department also asserts that Respondent on November 22, 2015 failed to supply period 2 lesson plans for three weeks in violation of a directive he received from A.P. Barnett (Specification 11). The Department notes that Respondent admitted that he failed to provide said plans, and describes his failure as "a continuation of a pattern of willful insubordination and a disregard of his supervisor's directive." (Tr. 854).

The Department also submits that Respondent failed on September 11, 2015 to follow directives to have: (a) a lesson plan readily available for administrators; and (b) an Instructional Objective posted on his classroom Smart Board (Specification 12). The Department relies on Principal Dorcely's testimony that he saw no Instructional Objective on Respondent's Smart Board on September 11th and that Respondent failed to produce a lesson plan upon request. (Tr. 856).

As for Respondent's alleged failure to submit his students' grades by their due dates (May 29 and June 15, 2015) (Specifications 13 and 14), the Department largely relies on emails (Department Exhibits 15 and 24) which directed Respondent to submit his missing grades. (Tr. 859). In response to Respondent's testimony that his grades were attached to emails which were timely sent, the Department demanded copies of said emails which were never produced because they "don't exist in the first place." (Tr. 861).

Regarding Respondent's alleged failure to have three Emergency Lesson Plans on file on February 12, 2015 (Specification 16), the Department contends that the rule concerning Emergency Lesson Plans appears in the school Handbook and was "clear." Moreover, school secretary Townes emailed Respondent on January 7, 2015 (Department Exhibit 27) to advise him to replenish his lesson plans. (Tr. 862). According to the Department: "[A]ll teachers know that in case of emergency or if a teacher is absent there have to be at least three Emergency Lesson Plans on file." (Tr. 862).

The Department also argues that Respondent failed to timely provide administrators with his weekly lesson plans on or about January 5, 2015 (Specification 17) which he was instructed to do in an Informal Observation Report (Department Exhibit 28). (Tr. 863). The Department relies on Principal Dorcely's testimony that Respondent failed to provide the

9

lesson plans, and Respondent's own admission that he never submitted said lesson plans. (Tr. 863-864).

The Department also asserts that Respondent failed to comply with the directive to schedule four instructional support sessions with the Principal on or about January 5, 2015 (Specification 18) which he was also directed to do in his Informal Observation Report. (Tr. 865). The Department relies on the Principal's testimony that Respondent failed to timely schedule the sessions, and on school secretary Townes' email to Principal Dorcely (Department Exhibit 29) as proof that Respondent didn't "schedule the four sessions until January 16, 2015" which was "well past the starting date of the week of January 5th which was the deadline." (Tr. 865). The Department underscores that "Respondent's failure... to adhere to the deadline was again another example of his deliberate disregard for an important directive given by an administrator." (Tr. 865).

The Department also addresses the "cooling off" period imposed on both Respondent and the Principal beginning in December 2015. According to the Department, "It wasn't a one-way street.... they were both hostile to each other," and further submits that Respondent was not a "victim" and "does not have clean hands." (Tr. 865-866). Also, the Department contends that Respondent's two witnesses, who represent the UFT and testified about the Principal's relationship to Respondent, were biased. This bias undermined UFT Chapter Leader Satchell's testimony that the Principal made retaliatory statements at the September 8, 2015 staff meeting. According to the Department, Satchell's "job is all about partiality and protecting union members" (Tr. 867) and, at any rate, his testimony about the September 8th meeting differed from Respondent's testimony. (Tr. 869).

10

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM INDEX NO. 655086/2017
NYSCEF DOC. NO. 19  RECEIVED NYSCEF: 07/28/2017

Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 12 of 32

In sum, the Department argues that "a lot of the directives given here were common sense, were things that the Respondent as a long-time DOE employee has done before." The Department adds that it "cannot rely on this Respondent to conduct himself in a professional and ethical manner. His misconduct demonstrated intentional and willful bad faith toward the Department." (Tr. 872). Finally, the Department notes that "not once did this Respondent demonstrate any remorse or take responsibility for what he did." (Tr. 877). According to the Department, Respondent's lack of remorse indicates that he "can't be rehabilitated and that he's not fit to continue to teach or be employed by the Department." (Tr. 877). The Department seeks the termination of Respondent's employment. (Tr. 879).

**Respondent's Position:** Respondent argues that all of the Specifications should be dismissed. First, Respondent asserts that the Department's case is "full of second and third degree levels of hearsay" and that "direct evidence of any wrongdoing... is missing." (Tr. 778). Second, Respondent contends that the letters to his file and the disciplinary conferences "that gave rise to the allegations in these specifications were conducted by an administration with a vendetta" against him. (Tr. 778). As evidence of the vendetta, Respondent cites the Principal's acknowledgment (which Respondent claims the Principal uttered at the September 8, 2015 staff meeting) that he knew he had been reported to "authorities," and that he was going into "beast mode." (Tr. 777). Respondent also asserts that the Principal subsequently told him: "I'm going to ride you." (Tr. 777). According to Respondent, "every word" uttered by Department witnesses was "tinged with disdain... because he would not take part" in the Principal's scheme to change a Regents grade in the summer of 2014. (Tr. 779).

Respondent also cites A.P. Barnett who testified that the Principal's relationship with

11

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM
NYSCEF DOC. NO. 19
INDEX NO. 655086/2017
RECEIVED NYSCEF: 07/28/2017
Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 13 of 32

Respondent was "toxic" (Tr. 779) but whose credibility, according to Respondent, suffered when she subsequently testified it was "toxic yet professional at the same time." (Tr. 781).

Respondent also argues that the "Specifications do not rise to the level of a 3020-a hearing;" rather, they "could have best been handled in maybe a recommendation or maybe simply a discussion" with him. (Tr. 782). Respondent maintains that once he declined to participate in the Principal's scheme to enable a student to pass the Regents exam, the Principal "knew that he needed to get him out." (Tr. 782). Respondent submits that the Principal was motivated by a need to "make himself look good by boosting the school's passage rates." (Tr. 785).

As for the particulars, Respondent argues that the Department failed to offer any firsthand testimony that he exited the school early on April 4, 2016 (Specification 1) or that his departure impacted the school: "There is nothing in the testimony or evidence that the students were left alone or put in harm's way." (Tr. 786). Also, Respondent maintains that the administration never spoke to "supervisors about [him] signing out," and thus failed to conduct a "full investigation" which was "fair and objective." (Tr. 787).

Respondent also argues that the Department failed to prove that he violated the student cell phone policy on February 5, 2016 (Specification 2), and submits that the students' written statements are mere hearsay which should not be considered. Respondent also maintains that he was outside of the classroom conferencing with a student when the Principal observed student cell phone usage (and that his co-teacher was in the classroom). (Tr. 787-788).

Respondent also addresses his alleged failure to attend the December 23, 2015 common planning meeting and other common planning meetings in October through

12

Case 1:19-cv-00775-MKV-RWL   Document 84-18   Filed 08/15/22   Page 13 of 16
FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                                INDEX NO. 655086/2017
NYSCEF DOC. NO. 59     Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 14 of 32                       RECEIVED NYSCEF: 07/28/2017

December 2015 (Specifications 3 and 5). According to Respondent, the meetings weren't actually used for common planning: "Many of these initial meetings in October and November were actually put aside for MOSL planning, MOSL grading, MOSL norming." (Tr. 796). Respondent continues: "it's fair to say that anything but common planning was taking place during the common planning sessions." (Tr. 796). Respondent also contends that he was required to meet with the Principal for "as many as 43 disciplinary meetings" during the scheduled common plan meetings and that he was "unable to split himself in two." (Tr. 790, 792). In addition, one of the "missed" common planning meetings (November 11, 2015) was Veteran's Day and another (November 25, 2015) was cancelled for a scheduled post-Thanksgiving party. (Tr. 795).

Respondent also denies that he committed any violation by turning off the classroom lights for a video presentation on November 25, 2015 (Specification 4). Respondent asks whether this is "subject matter for a disciplinary proceeding" where there are "no allegations that the students were hurt or in any harm or [that] the light being off could give rise to a dangerous situation." (Tr. 793). Respondent urges the use of common sense: "We've all sat in rooms where... the lighting in the room makes it difficult to view a screen." (Tr. 793-794). Respondent continues: "[I]s it more important to follow a directive that was never given and keep all the lights on or is it actually more important for the students to actually be able to see the screen... that has vital information that would be a part of their lesson for that particular day?" (Tr. 794).

Respondent also asserts that the Department failed to prove that he exited the school building on November 12, 2015 without signing out (Specification 6). Respondent denies that he ever exited the building as charged, and argues that the Principal lacked

13

credibility: "[A]fter realizing during cross-examination that based on his testimony this specification would have to be dismissed he changed his testimony and then said he did" see Respondent exit the building. (Tr. 797).

Respondent also denies that he failed to submit his midterm exam to administrators for their feedback and review (Specification 7). According to Respondent, he couldn't submit a midterm because there was no actual midterm to submit: "[A]t that time of the year... the MOSL was the test that was being administered and [he] bore no responsibility for creating the exam or the contents thereof." (Tr. 798).

Respondent also submits that there is "absolutely no direct evidence" that he permitted a student to reenter the school building through the wrong entrance on November 4, 2015 (Specification 8). (Tr. 799). Respondent notes that the Department never offered any testimony from A.P. Barnett (regarding this Specification) or from the Principal of another school (housed in the same building) who was purportedly present when the incident allegedly occurred. (Tr. 799-800). Respondent also notes that the Department failed to call any student witness and did not produce any video footage to substantiate the Specification. (Tr. 800).

Regarding his alleged failure to notify the main office or his immediate supervisor of his absences on October 23 and October 26, 2015 (Specifications 9 and 10), Respondent contends that he contacted SubCentral in full compliance with the instruction issued in the school's "Daily Docket" email. (Respondent Exhibit 11; Tr. 803).

Respondent contends that his alleged failure to follow a directive to supply period 2 lesson plans for three weeks (Specification 11) must be "viewed through the prism" of his "toxic relationship" with the Principal who had "the power to fabricate" the Specification's

14

Case 1:19-cv-00775-MKV-RWL   Document 84-18   Filed 08/15/22   Page 15 of 16
FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                        INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                                  RECEIVED NYSCEF: 07/28/2017
Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 16 of 32

allegations. (Tr. 804).

Respondent also argues that his alleged failure to have a lesson plan on September 11, 2015 (Specification 12(1)) is "not the type of Specification that should rise to a 3020-a hearing." (Tr. 804). Respondent explains that he postponed his "scientific revolution" lesson (for which he had a lesson plan) because his co-teacher that day indicated her desire to present a lesson commemorating 9/11. (Tr. 805-806).

As for his alleged failure to follow a directive to timely submit his 2014-2015 grades for marking periods 2, 3 and 4 (Specifications 13 and 14), Respondent again queries whether the charges "rise to the level of a 3020-a hearing?" (Tr. 806). Respondent asserts that he believed that he timely emailed the grades, and that he did so again once he was informed that the grades did not transmit. According to Respondent: "This was a simple technical issue and certainly should not be the subject of any disciplinary action." (Tr. 807).

Regarding his alleged failure to notify the main office or his immediate supervisor of his April 23, 2015 absence (Specification 15), Respondent submits that no evidence exists that his students "were left alone or did not have coverage." (Tr. 807). Respondent also maintains that that he fully complied with the school's Daily Docket instruction to timely contact SubCentral when absent. (Tr. 807-808).

Respondent maintains that other directives he allegedly failed to follow -- having three Emergency Lesson Plans on file on February 12, 2015, and supplying weekly lesson plans and scheduling four Instructional Support sessions on January 5, 2015 (Specifications 16, 17 and 18) -- involved merely "ministerial" acts. Respondent adds that there is "no evidence that the school or the student body were impacted by the alleged conduct." (Tr. 808).

15

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM                    INDEX NO. 655086/2017
NYSCEF DOC. NO. 19    Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 17 of 32    RECEIVED NYSCEF: 00/28/2017

Respondent reiterates that he was disciplined "in retaliation for filing the SCI report that Principal Dorcely engaged or attempted to engage in testing irregularities," and that he was supposed "to be protected by the Department from the behavior of his supervisor and the Department failed him." (Tr. 810). Respondent also highlights the "cooling off" period which was imposed on him and the Principal: "This is mind-blowing that the Principal, a person who is in charge of children... has to have a cooling off period from one of the people he is in charge of supervising." (Tr. 813). Respondent adds that the Principal "was so out of control that he violated his supervisor's orders" by terminating the cooling off period before its established January 30, 2016 conclusion. (Tr. 813). Respondent also cites Superintendent Prayor's testimony that Respondent wasn't the only staff member to allege that the Principal engaged in grade changing and harassment. (Tr. 814).

Respondent also cites UFT Chapter Leader Satchell's testimony that the Principal's "hostility" toward Respondent began with the summer of 2014 grade changing incident. Satchell also testified that the Principal stated at the September 8, 2015 staff meeting: "[Y]ou tried to take me down. I'm back and I'm stronger than ever and I'm going to ride you." (Tr. 815). While Respondent acknowledges that Satchell did not know who the target of the threat was, Satchell speculated that the comments were directed at Respondent. (Tr. 815).

Respondent also cites UFT District Representative Duncan's testimony that Urban Action Academy issued 50 of the 85 disciplinary letters issued by the schools under his supervision since December 2015. (Tr. 816). Duncan also testified that the Principal, at the meeting which established the "cooling off" period, nonetheless declared: "I'm still going forward with my 3020-a hearing" against Respondent. According to Respondent, this

NYCDOE00211