FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM  INDEX NO. 655086/2017
NYSCEF DOC. NO. 19  Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 18 of 32  RECEIVED NYSCEF: 00/28/2017

declaration shows that the Principal "wasn't acting in the best interest of the students, wasn't even acting in the best interest of Urban Action Academy. He was acting in his own interest and that was... getting Respondent thrown out of the school to protect himself." (Tr. 818).

Finally, Respondent emphasizes the timeline of events in order to support his claim of retaliation. Respondent reported his allegations that the Principal was involved in grade changing to SCI in April 2015, and SCI then referred the matter to OSI. Respondent was then interviewed by OSI in mid-June 2015. In early September 2015, the Principal "throws the gauntlet down" and threatens: "[Y]ou tried to take me down. I'm stronger than ever. I'm going to ride you." (Tr. 820). According to Respondent, the Principal followed him to his classroom on September 17, 2015 "taunting him, telling him how this year [he's] done and that he's going to fuck him up this year." (Tr. 821). Respondent maintains that he suffered additional "abuse... with the multiple disciplinary conferences," and adds: "There were over 25 disciplinary letters and without any sort of remedy." (Tr. 821). Respondent asserts that the disciplinary letters were intended to "simply create a paper case where [the Principal] would be able to bring a 3020-a hearing" against him. (Tr. 821).

Respondent, who seeks the dismissal of the Specifications, also argues that "there should be no further penalty" in the event any misconduct is found. (Tr. 823). Citing the importance of progressive discipline in determining penalties, Respondent notes that this hearing represents his "first disciplinary proceeding" and that he has served the Department for "years without incidents." (Tr. 825). Respondent underscores that no evidence exists that his conduct caused harm to students or that students were "in danger of harm or that the efficiency or effectiveness of the school was impacted by his alleged

behavior." (Tr. 826).

## OPINION

**SPECIFICATION 1:** On or about April 4, 2016, Respondent signed out and left the school building without approval at 12:20 p.m. and did not return to his post assignments (period 7 prep and period 8 law class).

This Specification charges Respondent with leaving the school building before the end of the school day without approval. Respondent does not dispute the he left early on April 4th but offers unrebutted testimony that he notified school secretary Townes before leaving. (Tr. 534). Respondent testified that he left early because he felt ill (Tr. 534), and wrote "illness" on the school's Staff Sign Out sheet as the "reason for leaving." (Department Exhibit 3). The record is strangely silent as to the "approval" process for teachers seeking to leave early when ill. While the Faculty/Staff Handbook (Department Exhibit 9) states that a teacher must notify administrators if ill, Respondent is not charged with failure to provide notice. Simply stated, the record is insufficiently developed for a finding that Respondent violated any school rule or policy for obtaining approval before he exited that day. Accordingly, Specification 1 is dismissed.

**SPECIFICATION 2:** On or about February 5, 2016, Respondent failed to adhere to the school's Cell Phone Policy when he allowed students to use their cell phones during his period 3 class.

The Faculty/Staff Handbook prohibits students from using cell phones in school (Department Exhibit 9); so too does another written policy adopted by the school. (Department Exhibit 10). In the letter to Respondent's file dated February 9, 2016, the Principal admonished Respondent for failing on February 5th "to direct students to put away their cell phones during instruction." (Department Exhibit 11).

18

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM INDEX NO. 655086/2017
NYSCEF DOC. NO. 19 RECEIVED NYSCEF: 00/28/2017
Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 20 of 32

The Principal and Respondent, who were the only two witnesses to testify about this Specification, offered sharply divergent versions of what happened on February 5th. Respondent contends that while his co-teacher was in the classroom, he was conferencing with a student outside of the classroom when the Principal observed students using their cell phones. The Principal testified that Respondent was "co-teaching with Ms. Burlingame" in the classroom when he made his observation. (Tr. 86). In weighing these competing versions, the balance tips in favor of Respondent largely because of Student S.B.'s written statement that only one teacher was present in the classroom when the Principal made his observation: "The thing was that other students had their phone out, but the teacher didn't seem to mind although we aren't supposed to have them out." (Department Exhibit 12). In the absence of persuasive evidence that Respondent was present in the co-taught classroom when students used their cell phones, I find that Respondent is not guilty of Specification 2 which is hereby dismissed.

**SPECIFICATION 3:** On or about December 23, 2015, during period 6, Respondent failed to attend and participate in his Common Planning Meeting with the social studies department.

Respondent acknowledged that attendance is mandatory at the contractually mandated Common Planning Meetings which were held on a daily basis in Room 101 during period 6. (Tr. 595-596). The Department's proof that Respondent failed to appear at the December 23, 2015 meeting is an attendance sheet dated "12/23/15" which has the notation "abs/did not attend" written next to Respondent's name. (Department Exhibit 14). Respondent's defense that he actually appeared at the December 23rd meeting is undermined by his failure to sign the attendance sheet which four other teachers signed to indicate their presence at the meeting. Accordingly, I find that Respondent is guilty of

19

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM INDEX NO. 655086/2017
NYSCEF DOC. NO. 19 RECEIVED NYSCEF: 07/28/2017
Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 21 of 32

Specification 3.

**SPECIFICATION 4:** On or about November 25, 2015, Respondent failed to adhere to school policy and/or written directives from school administrators to keep one set of lights on in the classroom during the viewing of a video or movie.

The Department failed to offer any evidence that Respondent was placed on notice, prior to November 25, 2015, that teachers must keep one set of classroom lights on during a video presentation. Accordingly, Respondent, who was attempting to improve the visibility of a short video (Tr. 722), is not guilty of Specification 4 which is hereby dismissed.

**SPECIFICATION 5:** During the 2015-2016 school year, Respondent, as of December 15, 2015, had failed to attend at least twenty-nine (29) out of thirty-seven (37) mandated professional C6 assignment "Common Planning Time" meetings, on or about the following dates:

1) Tuesday October 20, 2015
2) Wednesday October 21, 2015
3) Thursday October 22, 2015
4) Tuesday October 27, 2015
5) Wednesday October 28, 2015
6) Friday October 30, 2015
7) Monday November 2, 2015
8) Wednesday November 4, 2015
9) Thursday November 5, 2015
10) Friday November 6, 2015
11) Monday November 9, 2015
12) Tuesday November 10, 2015
13) Wednesday November 11, 2015
14) Thursday November 12, 2015
15) Friday November 13, 2015
16) Monday November 16, 2015
17) Tuesday November 17, 2015
18) Wednesday November 18, 2015
19) Thursday November 19, 2015
20) Friday November 20, 2015
21) Monday November 23, 2015
22) Wednesday November 25, 2015
23) Monday November 30, 2015
24) Tuesday December 1, 2015
25) Thursday December 3, 2015
26) Monday December 7, 2015

20

NYCDOE00215

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                              RECEIVED NYSCEF: 07/28/2017

27) Wednesday December 9, 2015
28) Thursday December 10, 2015
29) Tuesday December 15, 2015

As stated above in the Opinion addressing Specification 3, Respondent acknowledged that attendance is mandatory at the daily Common Planning Meetings. (Tr. 595-596). The Department supports this Specification by relying on Common Planning Meeting attendance sheets and the Principal's testimony that Respondent was at school on the dates he is charged with missing the meetings. (Tr. 114).

During the hearing, the Principal acknowledged that certain meetings should not have been charged, including November 11, 2015 (Veteran's Day) and when Respondent actually attended the meetings on November 9, 25, December 10 and 15, 2015. (Tr. 273-274, 286-291). Also, no documentary (or other) proof exists that Respondent missed the October 30 and November 20, 2015 meetings. Accordingly, these seven charged dates are hereby dismissed.

As for the balance of Specification 5, Respondent asserted that he never missed a Common Planning Meeting: "Either I was being disciplined with Mr. Dorcely or Ms. Barnett or when I would walk into those meetings, I didn't sign in. But I was always there." (Tr. 542). As proof of the disciplinary conferences which conflicted with the Common Planning Meetings, Respondent cites the Principal's letters summoning him to attend conferences on October 28, November 10, 13, 17 and 23, 2015. (Respondent Exhibits 2-6).

Respondent's defenses for not appearing at the Common Planning Meetings fail. The Principal's unrebutted testimony was that the disciplinary conferences lasted "no more than ten minutes," and the Principal also testified that Respondent was expected to attend

21

Case 1:19-cv-00775-MKV-RWL   Document 84-19   Filed 08/15/22   Page 6 of 15

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM        INDEX NO. 655086/2017
NYSCEF DOC. NO. 19    Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 23 of 32   RECEIVED NYSCEF: 00/28/2017

the Common Planning Meetings when the conferences concluded. (Tr. 362-363). Respondent should have known that he was expected to attend the Common Planning Meetings, which were mandatory, when the disciplinary conferences ended. Certainly, the administration explicitly stated its expectation in the November 19, 2015 letter to Respondent's file which admonishes him for missing Common Planning Meetings on at least two dates (November 10 and 13, 2015) when Respondent's disciplinary conferences were also scheduled. (Department Exhibit 18). Also, Respondent's purported failure to sign the attendance sheets is no defense, especially given his testimony that he was aware of the "procedure" requiring teachers to "sign on the sign in sheets to document" attendance at Common Planning Meetings. (Tr. 674). Accordingly, I find that Respondent is guilty of Specification 5, in part, as outlined above.

> **SPECIFICATION 6:** On or about November 12, 2015, Respondent left the school building during the school day without signing the Teacher Log in the school's Main Office.

The Principal, who was the only Department witness to address this Specification, admitted that he never saw Respondent exit the school building on November 12, 2015. (Tr. 302). For his part, Respondent denied leaving the school building during the school day on November 12th. (Tr. 551, 631). In the absence of competent evidence that Respondent left the school building during the school day on November 12th, Specification 6 cannot be sustained and is hereby dismissed.

> **SPECIFICATION 7:** On or about November 9, 2015, Respondent failed to follow a directive given by administration to submit his mid-term exam for feedback and review to administration.

The Department produced an October 6, 2015 "Daily Docket" email from the school secretary to teachers, including Respondent, which in part states: "Unit Test and Exams

22

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM INDEX NO. 655086/2017
NYSCEF DOC. NO. 19    Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 24 of 32  RECEIVED NYSCEF: 00/28/2017

are due to direct supervisor three days before administration." (Department Exhibit 20). The Department also introduced a November 9, 2015 email which in part reads: "Second Request. Dear ELA, Social Studies, Foreign Language and Art Teachers: As noted in the Daily Docket, please submit your midterm for review to your direct supervisor by Monday 9." (Department Exhibit 20).

In a November 9, 2015 email, Respondent responds to the Principal's November 9th email using the subject line "Re: Mid-Term Request." Respondent's email states: "I'm unable to access my midterm as plan. I have made several request to get my laptop without success. Please help me obtain my laptop to access my information." (Department Exhibit 20). One hour later, the Principal sent Respondent another email which states: "Please submit your midterm by the COB as directed." (Department Exhibit 20).

The Principal testified that he did not receive the midterm exam from Respondent (Tr. 122) who never denied failing to provide said exam to administrators for their feedback and review. Rather, Respondent described the midterm exam as a MOSL state exam for which he is not "responsible" for its contents. (Tr. 552). On cross-examination, Respondent added, almost as an afterthought, that his co-teacher submitted the midterm exam to the Principal. (Tr. 604).

I find Respondent's defense to be unconvincing. His November 9th email response to the Principal nowhere states that the midterm was a MOSL exam, and the notion that his co-teacher submitted the midterm exam is oddly inconsistent with Respondent's assertion that there was no exam to submit because it was a state administered MOSL exam. I find that the direction to submit the midterm exam for feedback and review was clear and that Respondent did not comply with the directive. Accordingly, I find that

NYCDOE00218

Respondent is guilty of Specification 7.

**SPECIFICATION 8:** On or about November 4, 2015, Respondent permitted a student to reenter the school building through exits 1 and 2, instead of entering through the Main Entrance, where the student would have been subjected to scanning.

The Department, which offered only hearsay evidence to support this Specification, never presented the testimony of a Principal of a different school (housed in the same building as Urban Action Academy) who purportedly witnessed the event, and also failed to have A.P. Barnett, who purportedly watched a video of the incident, address this Specification. In the absence of competent evidence to substantiate this charge (which Respondent denied), Specification 8 is dismissed.

**SPECIFICATION 9:** On or about October 23, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.
**SPECIFICATION 10:** On or about October 26, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.

Respondent does not deny that he was absent from school on October 23 and 26, 2015 and that he did not contact the main office or his immediate supervisor to report the absences; rather, Respondent contacted SubCentral to request coverage for the two dates he would be absent. (Tr. 555).

Respondent's defense that he complied with the correct procedure to contact SubCentral cannot prevail given that the 2015-2016 Faculty/Staff Handbook clearly states: "If you are going to be absent, please call your direct supervisor and the school... prior to 6:30 A.M." (Department Exhibit 9). In addition, Respondent had received a June 12, 2015 letter to file for failing to notify the school of his April 23, 2015 absence which referred to the particular reporting requirement in the school Handbook. While Respondent relies on Daily Docket emails, including one dated October 26, 2015 (Respondent Exhibit 11), as

24

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                              RECEIVED NYSCEF: 07/28/2017

Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 26 of 32

proof that he properly contacted SubCentral, the Daily Docket entries can only reasonably be read to supplement the school Handbook's clear and unmistakable reporting requirement. Accordingly, I find that Respondent is guilty of Specifications 9 and 10.

**SPECIFICATION 11:** On or about November 22, 2015, Respondent failed to follow a directive given by administration to supply period 2 lesson plans for three (3) weeks to administration.

In the Informal Observation Report of Respondent's October 29, 2015 lesson, A.P. Barnett describes how she met with Respondent on October 30th and addressed "next steps" which included: "submit your period 2 lesson plans for my review and feedback, by Thursday, November 18, 2015." (Department Exhibit 5). In a December 2nd email to Respondent, A.P. Barnett advises Respondent: "you have not yet submitted your lesson plans for your period 2 class for my review and feedback as directed in your informal observation feedback." A.P. Barnett's December 2nd email continues: "Please submit your period 2 lesson plans to me immediately." (Department Exhibit 5). Respondent admitted that he did not submit the period 2 lesson plans as directed. (Tr. 647). Accordingly, I find that Respondent is guilty of Specification 11.

**SPECIFICATION 12:** On or about September 11, 2015, Respondent failed to follow a directive given by administration to have the following:

1.  a lesson plan readily available upon request of an administrator;

2.  an Instructional Objective followed by a time stamp agenda listing the skills and standards the lesson would be addressing on the board/SmartBoard.

On September 11, 2015, Respondent's students were taught a lesson about the tragic events of 9/11. According to Respondent's credible testimony, his co-teacher suggested the lesson commemorating 9/11, which was a departure from the scheduled

25

Unit Plan lesson, that September 11th morning.

There is no dispute that teachers are required to have their lesson plans readily available in their classrooms and their Instructional Objective posted on their Smart Boards (Department Exhibit 9), and Respondent admits there was no lesson plan or posted Instructional Objective for the September 11th "substitute" lesson. While Hearing Officers must exercise caution before excusing rule violations, the circumstances herein are extraordinary. I find that Respondent is not guilty of any misconduct, and hereby dismiss Specification 12.

> **SPECIFICATION 13:** On or about June 15, 2015, Respondent failed to follow a directive given by administration to supply Marking Period 3 and 4 Electronic Grades Gathering (EGG) Files by the due date and time, which was June 15, 2015 at 3:00 pm.
>
> **SPECIFICATION 14:** On or about May 29, 2015, Respondent failed to follow a directive given by administration to supply Marking Period 2 Electronic Grades Gathering (EGG) Files by the due date and time, which was May 29, 2015 at 3:00 pm.

Electronic Grades Gathering ("EGG") is a system used by teachers to submit their grades to administrators for processing student report cards. (Tr. 164). Respondent acknowledged the importance of timely submitting grades. (Tr. 657). Respondent also acknowledged that he knew of the May 29th deadline for submitting his marking period 2 EGG files, and that he missed the May 29th deadline because his grades did not transmit as an email attachment. (Tr. 708-709).

I find that it was incumbent on Respondent, once he admitted missing the May 29th deadline, to demonstrate the actual submission date as a part of his "technical malfunction" defense. In the absence of any such evidence, what's left is Respondent's admission that he missed a known "important" deadline for submitting his marking period 2 grades.

26

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 19         Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 28 of 32        RECEIVED NYSCEF: 00/28/2017

Accordingly, I find that Respondent is guilty as charged in Specification 14.

I also find that Respondent's defense regarding marking periods 3 and 4 fails. Respondent acknowledged that he was aware of the June 15th deadline (Tr. 697) and yet did not attempt to send the grades until June 17th, two days after the deadline. (Tr. 700). It bears noting that Respondent never produced his emails (which the Department requested, Tr. 734-735) in an effort to demonstrate that he timely submitted his grades. In light of Respondent's admission, and A.P. Barnett's June 23rd email which states that she had not received Respondent's marking period 3 and 4 grades as of June 23, 2015 (Department Exhibit 24), I find that Respondent is guilty of Specification 13.

**SPECIFICATION 15:** On or about April 23, 2015, Respondent failed to contact the main office and/or an immediate supervisor to inform them of his absence.

Respondent does not deny that he was absent from school on April 23, 2015. Respondent also acknowledges that he contacted SubCentral to report his absence and not the main office or an immediate supervisor. (Tr. 568). Respondent's defense that he believed it was correct procedure to contact SubCentral cannot prevail given that the 2014-2015 Faculty/Staff Handbook clearly states: "If you are going to be absent, please call your direct supervisor and the school... prior to 6:30 A.M." (Department Exhibit 8). While Respondent offers no documentary evidence of any pre-April 23rd direction to contact SubCentral, any such direction could only reasonably be read as supplementing the unmistakable Handbook rule which requires a teacher to make contact with the school and an immediate supervisor. Under the circumstances, I find that Respondent is guilty of Specification 15.

27

FILED: NEW YORK COUNTY CLERK 00/28/2017 08:36 PM                INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                              RECEIVED NYSCEF: 00/28/2017

Case 1:19-cv-00775-MKV-RWL   Document 35-1   Filed 04/30/20   Page 29 of 32

**SPECIFICATION 16:** On or about February 12, 2015, Respondent failed to have on file three (3) Emergency Lesson Plans.

School secretary Townes sent Respondent an email on January 7, 2015 which, in part, reads: "Please be advised that your emergency lesson plans have been used during your absence on 1/6/15 & 1/7/15. Please be sure to replenish your (3) emergency lesson plans upon your return." (Department Exhibit 27; Tr. 714). The Principal provided the only evidence intended to show Respondent's noncompliance with Townes' directive. He identified his April 27, 2015 letter to file stating that Respondent failed to produce the emergency lesson plans as of a February 12th meeting. (Department Exhibit 27). For his part, Respondent denied failing to replenish the three emergency lesson plans as charged. (Tr. 716).

I find that the Department failed to substantiate this Specification. The Principal's testimony, regarding this Specification, was primarily about his April 27th letter to file which is dated ten weeks after Respondent allegedly failed to replenish his Emergency Lesson Plans at the February 12th meeting. This ten-week lapse of time raises legitimate questions about the accuracy of the April 27th letter which was the sole proof offered by the Department in support of this Specification. Without additional evidence that Respondent failed to timely submit the three emergency lesson plans, Specification 16 cannot be sustained and is hereby dismissed.

**SPECIFICATION 17:** On or about January 5, 2015, Respondent failed to follow a directive given by administration to supply weekly lesson plans to administration.
**SPECIFICATION 18:** On or about January 5, 2015, Respondent failed to follow a directive given by administration to schedule four (4) instructional support sessions.

Respondent's Informal Observation Report for his December 22, 2014 lesson is signed by both the Principal and Respondent on January 5, 2015. (Department Exhibit 28).

28

The Report contains the following directions issued by the Principal:

> 1. See Ms. Townes, School Secretary to schedule four (4) planning sessions with me during your prep to assist you with integrating the appropriate content standards, UDL, and DI strategies into your daily lesson for period 7.
>
> 2. Submit your period 7 lesson plans for the week every Monday for review, feedback, and support until further notice.

(Department Exhibit 28). The undisputed testimony is that Respondent never submitted his lesson plans (Tr. 188, 719), and thus violated the above direction. Accordingly I find that Respondent is guilty of Specification 17.

As for the scheduling of the four Instructional Support sessions, the Principal acknowledged that Respondent did schedule the sessions (Tr. 355), and school secretary Townes' January 16th email confirms that the sessions were scheduled. (Department Exhibit 29). Given that the Principal issued no deadline for scheduling the Instructional Support sessions, I find that the scheduling of the sessions no later than 11 days after the directive is not misconduct. Accordingly, I find that Respondent is not guilty of Specification 18 which is hereby dismissed.

## PENALTY

The following Specifications have been sustained: 3, 5 (in part), 7, 9, 10, 11, 13, 14, 15 and 17.

The following Specifications have been dismissed: 1, 2, 4, 6, 8, 12, 16 and 18.

Respondent is a long-term employee who began his employment with the Department as a substitute teacher in 1996. (Tr. 440). He was hired as a Social Studies teacher at Urban Action Academy, and began working at the school during the summer of 2014. (Tr. 359, 446). There is no evidence of any prior disciplinary penalties in

29

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM
NYSCEF DOC. NO. 59
INDEX NO. 655086/2017
RECEIVED NYSCEF: 07/28/2017

Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 31 of 32

Respondent's record.

Respondent has been found guilty of failing to: attend Common Planning Meetings, submit a midterm exam for feedback and review, contact the main office and an immediate supervisor when absent, supply lesson plans to administrators, and timely provide marking period grades. In so doing, Respondent engaged in misconduct.

In deciding the appropriate penalty, I am aware of the truly dysfunctional relationship between the Principal and Respondent which A.P. Barnett characterized as "toxic." Superintendent Prayor also described the extraordinary "cooling off" period which limited the Principal's contact with Respondent for a part of the 2015-2016 school year. While I am mindful of the relationship, an administrator's animus does not necessarily equate to a respondent's innocence. Once misconduct is found, penalties are determined by traditional factors such as: the seriousness of the misconduct, respondent's years of service and prior disciplinary history if any.

Herein, the unmistakable thread running through Respondent's misconduct is his stubborn noncompliance with his administrators' directives. I am aware of Respondent's long tenure and unblemished disciplinary record. I also note the Department's failure to sufficiently demonstrate how Respondent's misconduct adversely impacted the school or its students. For the reasons stated above, and based on the totality of the evidence, I impose a pay fine on Respondent in the amount of $2,000.00, and I so award.

NYCDOE00225

FILED: NEW YORK COUNTY CLERK 07/28/2017 08:36 PM INDEX NO. 655086/2017
NYSCEF DOC. NO. 19                                                         RECEIVED NYSCEF: 07/28/2017

Case 1:19-cv-00775-MKV-RWL Document 35-1 Filed 04/30/20 Page 32 of 32

## AWARD

1. Respondent, Jean Richard Severin, is guilty of Specifications 3, 5 (in part), 7, 9, 10, 11, 13, 14, 15 and 17.

2. Respondent, Jean Richard Severin, is not guilty of Specifications 1, 2, 4, 6, 8, 12, 16 and 18.

3. The proper penalty is a pay fine in the amount of $2,000.00 to be deducted in equal amounts from Respondent's pay over a period of twelve (12) months.

Dated: New York, New York
September 9, 2016

_____
JAMES A. BROWN, Esq.
Hearing Officer

I, JAMES A. BROWN, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Opinion and Award.

Dated: New York, New York
September 9, 2016

_____
JAMES A. BROWN, Esq.
Hearing Officer

NYCDOE00226