Dorcely Exhibit

12

10/14/21 MM

## SPECIAL COMPLAINT – JEAN RICHARD SEVERIN

### (OLR #160340, UFT #C21214)

| | |
|---|---|
| Complainant: | Jean Richard Severin |
| Title: | Teacher |
| School or Office/District: | Urban Action Academy (18K642), District 18 |
| Date of Conference: | June 23, 2016 |
| Persons in Attendance: | Frank Herman, UFT Representative on the Joint Investigation Committee (JIC) |
| | Alan Lichtenstein, Department of Education Representative on the Joint Investigation Committee |
| | Jean Richard Severin, Complainant |
| | Khiera Kersey-Heggs, UFT Special Representative |
| | Eileen Fields, UFT Special Representative (Observer) |
| | Steve Dorcely, Principal (by telephone) |
| | Robert Colon, CSA Representative (by telephone) |

## SPECIAL COMPLAINT

On June 16, 2016, Jean Richard Severin ("Complainant"), a teacher at 18K642, filed a Special Complaint based on the principal's actions during the 2014-15 and 2015-16 school years. As a remedy, the Union requests that administration: (1) cease the harassing behavior; (2) remove all disciplinary letters and observation reports issued during the 2015-16 school year from the Complainant's file; and (3) treat the complainant in a respectful and professional manner. On May 6, 2016 the Complainant was removed from 18K641 and reassigned to CSE Three and on May 13, 2016 the Department preferred 3020a charges against the Complainant.

The Complainant asserts that he was subjected to course of harassment as retaliation for refusing to change a student's Regents examination grade and later reporting the incident to the Special Commissioner of Investigation (SCI). The Union and Complainant averred that the principal embarked on a course of harassment during the 2014-15 and 2015-16 school years as follows:
- In July 2014 the Complainant was hired through the Open Market by Principal Dorcely, who was impressed by Severin's credentials and his students' 89 percent Regents pass rate. In late August Severin was paid per-session for five-six days to write curriculum with five-six other social studies teachers and place students into class sections. Dorcely told Severin that during the 2014-15 he wanted him (1) to become a writing specialist and train teachers to teach writing, and (2) work as an athletic coach. After the incident described below, the principal did not honor these promises.
- In August 2014, while working on curriculum writing, Dorcely called Severin into his office. A mother and daughter had come to school because the 12th grade girl had failed the Global Regents exam with a score of 63 or 64. With the girl present, Dorcely asked Severin to review the girl's test paper to see if the score was accurate and where her answers could be strengthened. Severin indicated where the student's responses to the document-based questions (DBQs) could be improved. Dorcely then handed the student a pencil and was about to allow the girl to revise her answers when Severin recoiled and indicated through his body language that giving her this

Re: Special Complaint Jean Richard Severin (OLR #160340, UFT #C21214)          page 2

opportunity to add to her answers was inappropriate. As a result, Dorcely took back the pencil and the student was not allowed to revise her answers. The school later hired the student as a school aide, Severin tutored her, and as a result she passed the Regents exam in January 2015.
- In September 2014 Dorcely told Severin to disregard what happened with the exam paper but clearly regretted giving the girl an opportunity to change her answers. The retaliation began immediately when the principal did not assign Severin the coaching position.
- Since August 2014 Severin had regretted not reporting the principal's Regents testing breech and in April 2015 he could no longer contain himself and he called SCI to report the incident. Consequently, on June 24, 2015 an investigator came to the school and interviewed both the principal and the Complainant. Once the principal was aware of Severin's reporting the incident the retaliation increased.
- At a disciplinary conference on February 12, 2015 Dorcely falsely accused Severin of allowing gangs to recruit members in his classes. In fact, in August 2014 he and the other social studies teachers placed a particularly difficult student and alleged gang member, "JH," in Severin's class at Severin's behest because Severin had taught the student in elementary school and had a relationship with him. The student showed great improvement under Severin's guidance and watchful eye.
- At the first September 8, 2015 faculty conference, while looking at Severin, Dorcely said, "Despite recent events of staff reporting me to authorities, I'm still standing and going strong. Nothing happened; I'm stronger than ever and I'm going into beast mode."
- At the second September 8, 2015 faculty conference, while Severin was taking notes, Dorcely said, "You can write whatever you want and report it to whomever you want. It only makes me stronger."
- At a September 11, 2015 staff meeting the principal told the Complainant, "This year I'm going to ride you." Dorcely visited Severin's classroom three times that day and told him he had an "unacceptable" lesson plan.
- The grievant received a disciplinary letter dated September 22, 2015 memorializing a meeting of September 17, 2015. After the meeting, Dorcely walked Severin to his classroom and said, "Why did you come back? Why are you here? I'm going to fuck you up. This year, you're done and you're gone." Severin asked, "Is this a threat?" to which Dorcely replied, "Yes." As a result, on October 21, 2015 Severin filed a police complaint regarding these threats.
- In September-October 2015 Dorcely observed Severin 20 times and remained in the classroom for 12-18 minutes, so these were not walkthroughs.
- During the period, September 9-21, 2015, Dorcely observed Severin on 12 consecutive days.
- During the period, September – December 2015, Severin had 15 disciplinary conferences.
- In October 2015, Dorcely was absent for seven days and returned with a doctor's note. Nevertheless, he received a disciplinary letter regarding the absences.
- After the October 28, 2015 disciplinary conference regarding the absences had concluded, Severin was standing on the room's threshold and Dorcely pushed him three times in order to enter the room. Severin said three times, "Please don't put your hands on me." Severin later filed a police complaint regarding this incident. On November 3, 2015 Severin received a disciplinary file letter regarding the absences,
- On November 9, 2015, but also on numerous other occasions, Severin observed Dorcely photographing him through the classroom door and in other locations. This was an attempt to intimidate him. As a result, on February 10, 2016 Severin filed a police complaint.
- During last period on November 25, 2015 the principal, assistant principal (AP) and secretary

　　　approached Severin at a staff-student Thanksgiving celebration and demanded he sign a number of documents. Severin asked for an opportunity to read them prior to signing them, which greatly upset Dorcely. So much so, that he stopped the party and sent all the students back to their classes. The fire gongs then rang signaling a fire drill during which students were dismissed. After dismissal Dorcely went to Severin's classroom and again demanded he sign the documents. Severin refused, took them home to read and returned them signed on the first day after Thanksgiving break.
- On December 18, 2015 Severin received a disciplinary file letter for having the classroom lights off while students watched a video on November 24, 2015.
- In December 2015 Superintendent Prayor, the district UFT representative, chapter leader, principal and Complainant met in an effort to mediate the conflict between Severin and Dorcely. The following oral agreement was reached:
    - the Complainant would be allowed to transfer from the school by February 2016,
    - the principal would not conduct observations until Severin's departure,
    - the principal and Complainant would have limited communication,
    - no complaints would be made to agencies outside the school, and
    - 3020a charges would not be preferred against Severin.
- However, Dorcely immediately breeched the agreement in January 2016. After Severin returned the signed disciplinary letters, Dorcely told him he would pursue 3020a charges.
- On February 9, 2016 Severin received a disciplinary file letter for not having his students put away cell phones during class. Yet, his co-teacher who was present in the room was not similarly disciplined.
- During the 2015-16 school year, the principal did not provide Severin with a co-teacher for one of his classes despite some of the students' individualized educational plans (IEPs) requiring it.
- On March 5, 2016 the district UFT representative emailed the superintendent and asked if he had received Severin's special complaint. Prayor said, "No," and added that Dorcely would be preferring 3020a charges. Indeed, on May 6, 2016 the Complainant was reassigned pending receipt of 3020a charges, which he received a week later.

Based on the above, the principal is guilty of harassment as defined in the Agreement and the Weinstock arbitration award dated August 20, 1988 (AAA #1339 0515 88).

## ADMINISTRATION RESPONSE

Principal Dorcely denies harassing the Complainant in any manner whatsoever. Administration's actions as regards Complainant, including file documents (observation reports and disciplinary letters) constitute a proper course of supervision. The principal responded to Severin's assertions as follows:
- In July 2014 temporarily assigned AP Williams recommended Severin to the principal. The school's selection committee, which included Dorcely, interviewed Severin and offered him a position for the 2014-15 school year. The committee took Severin's word that his students had an 87% Regents exam passing rate. In retrospect, Dorcely regrets not properly vetting Severin. He later learned that Urban Action Academy was Severin's ninth school in nine years and that Severin had been rated "Developing" for the 2013-14 school year and arrived at the school requiring a Teacher Improvement Plan (TIP). He also later learned that Severin had been rated "Unsatisfactory" in June 2009 and June 2012.
- In August 2014 Severin was meeting with two peer collaborative teachers to design performance

Re: Special Complaint Jean Richard Severin (OLR #160340, UFT #C21214)        page 4

tasks for students taking grade nine social studies. During that time a parent brought her grade 12 daughter to the school to speak with Dorcely because the student wanted to drop out. She was despondent because she had failed the Global and U.S. History Regents exams. Dorcely made a copy of the student's Global Regents answer booklet for the parent to view. Severin happened to enter the office while Dorcely was meeting with the parent and child and offered to review the student's answer booklet. Dorcely left briefly and re-entered two to five minutes later to find the student writing in her booklet. Dorcely asked in shock, "What are you doing?" and the Complainant quickly snatched the booklet from the student's hands and, in turn, Dorcely took the booklet from Severin. Severin then quickly left the room. Dorcely said to AP Barnett, who was in the conference room next door, "Can you believe this guy?"

- Dorcely convinced the parent to leave her daughter enrolled in school so she could re-take the failed Regents exams in January 2015. During the fall 2014 semester, the youngster took two classes daily, Global Studies and US History, and received tutoring in these same courses, but not from Severin. When she was not in class she served the school as an unpaid student aide. In January 2015 the girl passed the Regents exams and graduated.
- The principal denies making all of the derogatory and threatening statements attributed to him by Severin. When the JIC presented him with the alleged statements he made at faculty conferences, Dorcely went into the hallway and asked the first two teachers he saw to come into his office. Dorcely stepped out and the JIC then asked them if Dorcely had ever made the alleged remarks and they both said, "No."
- Dorcely identified Severin's professional deficiencies as poor lesson planning, not providing engaging instruction and not having sufficient content knowledge, which were all addressed in the TIP collaboratively developed in September 2014.
- Dorcely and AP Barnett observed Severin and both Dorcely and Barnett regularly worked with Severin as part of the TIP. Severin's planning and instruction showed some improvement in the fall 2014 semester but then reversed course and worsened in the spring 2015 semester.
- The number and frequency of the observations cited by Severin are absolutely false.
- The principal was not aware of the police complaints that Severin lodged. Nevertheless, he was never contacted by the police for any of the three complaints. Thus, the police deemed them insufficiently serious to pursue.
- Dorcely observed Severin on September 11, 2015 and Severin could not produce a lesson plan for the observed lesson. Both Severin and his co-teacher received "Ineffective" observation reports.
- The Complainant received a disciplinary letter regarding his absences on October 3, 8, 9, 13, 14, 15, and 16, 2015 because he failed to notify the school he would be absent on any of these days. Clearly, this is a violation of DOE and school attendance policies. He essentially went absent without leave (AWOL).
- On November 23, 2015 the principal asked the Complainant to sign a number of outstanding file letters during his preparation period but Severin refused. Coincidentally, there was a rapid dismissal that afternoon, the last day before Thanksgiving break, after which the principal went to the Complainant's classroom. The early end to period eight and subsequent rapid dismissal had nothing to do with Severin's refusing to sign the letters.
- On December 18, 2015 the principal disciplined the Complainant for having his classroom lights off while the class was viewing a video. Student engagement was extremely low; numerous students had their heads down and were not viewing the video and there was no instructional activity associated with viewing the video. Further, the absence of lights violated a school policy

- that was known to Severin.
- The alleged oral agreement reached in Superintendent Prayor's office in December 2015 included two provisions: (1) Severin would transfer from the school by February 2016, and (2) only the AP would conduct classroom observations between December 2015 and February 2016.
- Dorcely first became aware of Severin's false accusation regarding the Regents exam when an Office of Special Investigations (OSI) investigator came to the school and interviewed him in June 2015.
  Note: On May 8, 2015 SCI referred the matter to OSI, who in turn, conducted the investigation.
- In May 2016 the Department preferred 3020a charges against Severin and the first hearing is taking place on June 24, 2016.

## DECISION

On March 23, 2016 the JIC conducted its investigation at Urban Action Academy. There is no evidence that Complainant has been subjected to harassment as contemplated by Article 23. The Complainant's contention that the administrative actions, observation reports and disciplinary file letters comprise a pattern of harassment falls flat because, as was explained by the administration, these actions, reports and letters were warranted given Complainant's performance issues. Moreover, the administration credibly denied engaging in any harassing behavior as contemplated by Article 23 and provided Dr. Severin with extensive support to improve his professional performance. Upon questioning by the undersigned, Severin's description of the events in August 2014 never included an actual request by the principal to change a student's Regents exam grade. Severin's account at the Step 2 conference on June 23, 2016 is very different from his statements to the JIC and the OSI investigator in which he stated that he was asked to change a student's Regents exam score. These disparate accounts of the occurrence which allegedly began administration's course of harassment severely undermine Severin's credibility. After considering the documents submitted by all parties, and after having interviewed the members of the Joint Investigation Committee, as well as other affected parties, I find that there is no evidence of harassment or intimidation and deny the Special Complaint.

　　　　　　　　　　　　　　　　　　　MARCEL KSHENSKY, Ed.D.
　　　　　　　　　　　　　　　　　　　Chancellor's Representative

APPROVED:

_Carmen Fariña_ /ks　　6/27/2016
CARMEN FARIÑA　　　　　Dated
CHANCELLOR


MK

DEF_E_0002084